SPURLOCK v. THE MISSOURI PACIFIC RAILWAY COMPANY, *Appellant.*

1. Practice: PLEADING: AMENDED PETITIONS. The mere fact that the petition on which a case is being tried, has been twice amended, where there is nothing to show that the original, or either amended petition, had been adjudged insufficient on demurrer, or stricken out on motion, in whole or in part, will not warrant the court in excluding the introduction of any evidence on the trial. (*Affirming Spurlock v. Mo. Pac. Ry. Co.*, *ante*, p. 13.)

2. ———: ———: ———: CHANGING CAUSE OF ACTION. The objection that the amendment of a petition entirely changes the cause of action, must be made at the time the petition is amended. It cannot be made for the first time in the appellate court, nor even at the trial. Failure to make timely objection and pleading the general issue will preclude any complaint on that account.

3. ———: DEFECTIVE PETITION: OBJECTION TO INTRODUCTION OF EVIDENCE. An objection to the introduction of any evidence upon the ground that the petition is vague, indefinite, and uncertain, and fails to state a cause of action, should not be sustained, except where the petition wholly fails to state any cause of action. If the petition states a cause of action, though defectively, the objection should not prevail. It should be raised and disposed of before trial.

4. ——— : DOUBLE RECOVERY. There can rightfully be but one recovery for the same wrong, and a statement of the same facts will not support a recovery upon two counts of the petition.

5. ——— : DEMURRER TO EVIDENCE : CARRIERS : FAILURE TO FURNISH SHIPPING FACILITIES : DAMAGES. In an action against a railroad company to recover damages for loss of profits on a contract to furnish railroad ties, because of defendant's refusal or failure to furnish plaintiff reasonable, proper, and fair shipping facilities, where the evidence shows that plaintiff gave up his contract on account of being crowded out of the tie yards by another who was an independent contractor and patron of the defendant, and not its agent and employe, plaintiff cannot recover, and a demurrer to the evidence should be sustained.

*Appeal from Hickory Circuit Court.*—HON. BEN. V. ALTON, Judge.

REVERSED AND REMANDED.

*Thos. J. Portis* for appellant.

(1) Appellant's objection to the introduction of any evidence should have been sustained. The plaintiff had already filed three petitions, and defendant did not waive its right to the objection by having filed its answer. *Beardslee v. Morgner,* 73 Mo. 23 ; *Wait v. Van Allen,* 22 N. Y. 319 ; *Ward v. Pine,* 50 Mo. 39 ; *Lotman v. Barnett,* 62 Mo. 159 ; *Fields v. Maloney,* 78 Mo. 172. (2) The cause of action stated in the last petition is wholly different from those contained in the other petitions. (3) There are several distinct causes of action blended in the first count. (4) The objections made by defendant to incompetent evidence should have been sustained. (5) The instruction asked by appellant at the close of plaintiff's evidence, to the effect that he was not entitled to recover, should have been given. *Beardslee v. Morgner,* 73 Mo. 23 ; *Wait v. Van Allen,* 22 N. Y. 319 ; 2 Rorer on Railroads, 1372 ; Hutchinson on Carriers, 447 ; *Carr v. Railroad,* 7 Excheq. 707 ; Angell on Carriers, sec. 124. (6) The instruction asked

by appellant at the close of plaintiff's evidence, to the effect that he was not entitled to recover on the second count, should have been given. 2 Rorer on Railroads, 1372-3; *Bend v. Hoyt*, 13 Pet. 263; *Elliott v. Swarthout*, 10 Pet. 137. Plaintiff should not have abandoned his business. He can charge only for such damages as by reasonable endeavor and expense he could not prevent. *Waters v. Brown*, 44 Mo. 302; *Douglass v. Stephens*, 18 Mo. 365; 2 Greenl. on Evid., sec. 261; *State ex rel. v. Powell*, 44 Mo. 437; *Fisher v. Goebel*, 40 Mo. 479; *Thompson v. Shattuck*, 2 Met. 615. (7) The instructions given to the jury at the instance of respondent are erroneous.

*J. P. Ross* for respondent.

(1) The plaintiff had a just cause of action against defendant, first, for discrimination and refusal to receive and carry his railroad ties, and, next, to recover back the money it had extorted from him for the ties it did transport. Story on Bailments [7 Ed.] sec. 508; Angell on Carriers [5 Ed.] secs. 124, 418; *New Jersey v. Bank*, 6 How. 344; *People v. New York*, 12 Cent. Law Jour. 108. (2) The plaintiff recovered on reasonably fair pleadings, and, under the statutes, the judgment should not be reversed. R. S., secs. 3546, 3569. (3) Plaintiff's cause of action was the same in all the petitions. (4) The damages assessed are not too remote, but flow from the direct and tortious acts of the defendant.

RAY, J.—This suit was commenced in the Morgan circuit court, and afterwards transferred to that of Hickory county, where the trial was had.

The petition in the cause, on which the case was tried, contains two counts; and was the third amended petition filed in the cause, by leave of the court. The first count is as follows:

" 1. The said plaintiff states, that the said defend-

ant is a railroad corporation, duly incorporated and organized under the laws of the state of Missouri, and was in June, 1880, and from that date till now, operating a railroad from St. Louis, Missouri, to Kansas City, or State Line, Missouri, and from Versailles, Morgan county, Missouri, to Tipton, Missouri, where it intersected and connected with their main line, and were, and are yet, operating said roads for the purpose of carrying freight and passengers for hire as common carriers.

"2. That, in the month of May, 1880, the said plaintiff had made and entered into a contract with George W. Sedgwick, of Kansas City, Missouri, to deliver to the said George W. Sedgwick, or his agent, at Kansas City, Missouri, one hundred thousand railroad ties of light weight and size, and for which the said George W. Sedgwick agreed to pay the plaintiff the sum of fifty-five cents per tie in the cars of the defendant, at their depot in Kansas City, Missouri. Plaintiff states that, in pursuance of said contract, he employed hands, and wagons and teams, and purchased tools, and began to cut, make, haul, buy, and ship railroad ties from the depot of the said defendant, in Versailles, Missouri, and had engaged large quantities of tie timber in addition to several hundred acres he owned, and had made numerous contracts for railroad ties, and had incurred great labor and expense in order to comply with his said contract on his part, and was ready and willing to comply with the same if he had not been prevented from so doing by the unlawful acts of defendant, and would have received great advantages and profits from the same, to-wit, the sum of sixteen thousand dollars net profits; said plaintiff further states that when he made and entered into said contract with said Sedgwick, he expected to ship said ties over their line of railroad from Versailles to Kansas City, Missouri, which was the only line he could ship over, and expected, and had a right to expect, that the defendant would receive and ship

the ties for a fair and reasonable rate or compensation, and give him fair and reasonable shipping facilities, as required by law and justice.

"3.   Plaintiff further states, that in June, 1880, he had got in several carloads of railroad ties at their depot in Versailles, Missouri, to ship to said Sedgwick, and demanded transportation over their said road, and offered to pay said defendant their legal and reasonable charges for carrying said railroad ties to said Sedgwick, at Kansas City, Missouri, which said legal charges would not, in reason and justice, have exceeded sixteen dollars per carload; but said defendant, with the view and intent to prohibit and prevent the said plaintiff from shipping his said one hundred thousand railroad ties to said Sedgwick, at Kansas City, Missouri, and receiving the profits to himself, the said defendant demanded, took, and received of the plaintiff, the sum of forty dollars per carload for shipping his said ties between said points, a distance of one hundred and forty miles only, and would not receive and ship them for less, nor for a reasonable or fair rate when requested so to do.

"4.   The said plaintiff says that said charge of forty dollars per carload was exorbitant, extortionate, and unreasonable, and greater than said defendant demands, takes, and receives from others, to-wit, G. P. Clark and others for carrying goods or articles of like class, over like or greater distances of their said road, and said exorbitant charges were made and exacted of the plaintiff to prohibit, and did prohibit, him from shipping his ties over said road, and that defendant might take all the profits on tie contracts and business to themselves or employes at said point of Versailles, Missouri.

"5.   The plaintiff says said Sedgwick was perfectly able and willing to pay him for said ties on delivery, and that he, the plaintiff, had prepared himself and would have delivered said one hundred thousand rail-

road ties at Kansas City, Missouri, to said George W. Sedgwick, and have received sixteen thousand dollars profits on them, and would have made large sums, to-wit, one thousand dollars by cutting his own timber into ties, if it had not been for said wrongful acts of the defendant, in demanding unlawful and unreasonable and extortionate rates of freight, and in refusing and failing to furnish plaintiff with reasonable, proper, and fair shipping facilities, and thereby preventing him from shipping his ties and receiving said profits, wherefore the plaintiff says he is injured and aggrieved and has sustained damages in the sum of twenty thousand dollars, for which he asks judgment."

The second count is as follows :

" And the said plaintiff, for further plea says, that said defendant is a corporation, duly organized and incorporated under the laws of Missouri, and was in June, 1880, operating a railroad from Versailles, Morgan county, Missouri, to Kansas City, or State Line, Missouri, and were receiving and carrying freight for hire as common carriers between said points, and that, in said month of June, 1880, the said plaintiff shipped seven carloads of railroad ties over plaintiff's said road from Versailles, Missouri, to Kansas City, Missouri, a distance of less than one hundred and forty miles, without any special contract as to rates of freight ; that a reasonable, fair, just, and legal rate of freight on said railroad ties would have been sixteen dollars per carload, or one hundred and twelve dollars for the seven carloads, when, in truth and fact, said defendant demanded, took, received, and compelled the plaintiff to pay forty dollars per carload, or the sum of two hundred and eighty dollars for carrying said ties, which said charges were unjust, illegal, and extortionate, and exorbitant, and exceeded the legal rates by one hundred and sixty-eight dollars, which amount was wrongfully taken and exacted by defendant from the plaintiff against his will and pro-

test. Wherefore plaintiff says he is injured and aggrieved, and has sustained damages in the sum of one hundred and sixty-eight dollars, for which he asks judgment."

The answer to this amended petition was a general denial. The cause was tried before a jury, who returned the following verdict: "We, the jury, find the issues for Spurlock, plaintiff, on the first count, in the sum of five thousand dollars, and on the second count, in the sum of one hundred and forty-nine dollars." On which there was judgment accordingly, from which the defendant, after unsuccessful motions for new trial, and in arrest, appealed to this court.

The first point here relied on by defendant, for a reversal, is the overruling of its objection, on the trial, to the introduction of any evidence, under either one of the counts in the petition: (1) on the *sole* ground that the petition on which the case was being tried was the third amended petition, in the cause; (2) because the amendment worked an entire change of the cause of action set out in the original petition; and (3) because neither the first nor second count of the petition stated facts, sufficient to constitute a cause of action, and that the first count, especially, is altogether too vague, indefinite, and uncertain. The second point is the refusal of the court, at the close of plaintiff's testimony, to give an instruction in the nature of a demurrer to the evidence, on each of the counts in the petition; and, third, a refusal to give a like instruction at the close of the entire evidence in the cause. The fourth ground is the admission of incompetent, irrelevant, and immaterial testimony offered by the plaintiff; and, lastly, the giving of instructions, asked by the plaintiff, six in number. These objections, or such of them as we deem necessary to the proper disposition of the cause, will be noticed in the progress of the opinion.

The first point, and the several grounds of objection

Spurlock v. The Mo. Pac. Ry. Co.

therein mentioned, will first be considered, in their order. As to the first ground (which was on the *sole* ground, the petition, on which the cause was being tried, was the third amended petition in the cause), it is sufficient to say that it does not appear that the original petition, or the first or second amended petition, had been adjudged insufficient, in whole or in part, upon demurrer; or that the whole or some part thereof had been stricken out on motion, and in such case, the mere fact that the petition, on which the case was being tried, was the third amended petition, without more, furnishes no sufficient reason why the court should exclude the introduction of any evidence on the trial, as asked by defendant. This point is virtually passed upon in the case of *Spurlock v. Railroad, ante*, p. 13.

As to the second ground, even if it be conceded (as the testimony *subsequently* offered by the defendant tends to show) that the original petition, in both its counts, was for penalties imposed by statute for violations of law; and that each of the amendments, in both its counts, were common-law actions based upon the same transaction, or subject-matter, still, under the facts in this record, the objection comes too late; the objection, if valid, should have been made when the change was first made. The record nowhere shows that any objection was made, on this account, until it was raised for the first time in this court. Even if it had been raised at the trial, it would have been too late. The defendant, by failing to make timely objections, and especially, by pleading the general issue to the third amended petition, waived the objection now insisted on, and will not now be heard to complain on that account.

As to the third ground specified under the first point, it is the well-settled rule and practice in this state not to allow the objection here made, except in cases where the petition utterly fails to state any cause

of action whatever. It will not be sustained, however informal the petition may be, if it still contains a cause of action, though defectively stated. The rule is, that, wherever the defect would be cured after verdict, the objection cannot be taken by motion to exclude all evidence at the trial, as was attempted in this case. *Grove v. City of Kansas*, 75 Mo. 672, 675, and cases there cited. Subject to these rules, this objection of defendant challenges the sufficiency of both counts of the petition. If either of them thus tested fails to state a cause of action, the objection as to that one should be sustained, but if neither of them so fails, the objection was properly overruled. For the purpose of this objection, the material facts averred in each count must be assumed to be true. Upon inspection, it must be conceded that the first count of the petition fails, in several particulars, to conform to the rules of good pleading. It is noticeably wanting in definiteness and certainty in the fourth paragraph, where it uses the following language : "And that defendant might take all the profits on tie contracts and business to themselves, or employes, at said town of Versailles, Mo." From this, it possibly may be inferred that defendant was engaged in the business of buying and shipping ties at that point, for and on its own account, or that of its employes, as a matter of speculation. If that is what was intended, the charge should be made by direct and affirmative averment to that effect.

Again, in the fifth paragraph, the statement, if possible, is even more indefinite and uncertain, when it says, "and in refusing and failing to furnish plaintiff with reasonable, proper, and fair shipping facilities." In what particulars said refusal and failure consist does not appear. Whether in furnishing the plaintiff proper access with his ties to its tie yards, railroad track, or freight cars, in supplying cars sufficient in number and seasonable in time, when requested for transporting said

ties ; or in not affording him equal facilities, in all or any of these matters with its other customers, is not stated. Whatever plaintiff meant in this regard should be made to appear with greater certainty, by direct and affirmative averment in that behalf. Other formal defects and objections, possibly, might be pointed out, but it is not necessary. While this is so, and assuming, as we must, that the material facts stated are true, we are not prepared to say that this count states no cause of action whatever. The most that we can say of it, perhaps, is, that the cause of action therein is defectively stated. Whatever just complaint of this sort defendant had to this count ought to have been made and disposed of by motion before the trial ; and having failed so to do, he will not be heard to complain this way at the trial. R. S. 1879, sec. 3519 ; *Pipkin v. Allen*, 29 Mo. 229.

As to the second count, we see no valid cause of complaint, at least, none that is available in the mode here attempted. The complaint that there is, in this count, no sufficient allegation that plaintiff paid said exorbitant charges ; or that he properly protested against the demand and payment thereof, is, we think, without merit, especially when thus made at the trial. It may be added, that each of these counts, on their face, purport to be for separate and distinct causes of action, and for the purpose of this objection, this, also, must be assumed to be true. After the coming in of the evidence, however, the court might, possibly, have reason to think or know that such was not the fact, in whole or in part, and take such action as might then seem proper and just. There was, therefore, no error in over-ruling this objection.

The second point relied on for a reversal is the refusal of the court, at the close of plaintiff's evidence, to instruct the jury, at defendant's request, that, under the pleadings and evidence as adduced, the plaintiff was

not entitled to recover on either count of the petition. For this purpose, it will be necessary to state such portions of the evidence deemed material to each count, distinguishing, when necessary, that applicable to each, but for convenience, they may be taken and considered together, both counts having been tried by the same jury, upon the mass of evidence before them, the damage on each count, however, being assessed separately, and judgment rendered accordingly.

In the first place, it may be well to premise that the substance of the first count is to the effect that defendant, by the wrongful acts therein mentioned, sought to prevent, and did prevent, plaintiff from performing his said tie contract, and thereby compelled him to abandon the came, to his damage, in the amount claimed. The only wrongful acts therein specified, by which it thus sought and accomplished its said purpose, were, (1) in demanding and exacting from plaintiff the exorbitant rates of freight, on said "several carloads of railroad ties" therein specified ; and (2) "in refusing and failing to furnish plaintiff with reasonable, proper, and fair shipping facilities." The object of the second count is to recover back from defendant the excess of exorbitant, over legal, rates of freight, wrongfully demanded, received, and extorted from plaintiff, against his will and protest, on the "seven carloads of railroad ties" shipped by plaintiff over defendant's road, from Versailles to Kansas City, Missouri, to his damage as claimed. Of the evidence applicable to this second count, it is sufficient to say that it was appropriate and amply sustains the same. There was, therefore, no error in overruling defendant's said instruction as to that count.

As to the first count the enquiry is, was there any evidence, as adduced, entitling the plaintiff to a verdict thereon ? Of the first wrongful act complained of in this count, it may be remarked that it is not there

pleaded, as, of itself, entitling plaintiff to a verdict for the excess of said exorbitant charges over the legal rates of freight; but simply as one of the wrongful acts by which defendant prevented the plaintiff from performing his said tie contract, and thereby compelled him to abandon the same, whereby he lost the profits arising from its performance, as claimed in said first count. The evidence shows, what this count itself concedes, that the performance of this tie contract, to the extent of these "several carloads of railroad ties," was not prevented; but, in point of fact, was to that extent fully executed by the shipment thereof to said Sedgwick, and the reception by plaintiff, from said Sedgwick, of the full contract price therefor. The evidence further conclusively shows that these "several carloads of railroad ties," mentioned in the first count, are the identical "seven carloads" mentioned in and appropriately made the basis of the cause of action, of said second count and none other.

Rightfully, there can be but one recovery for the same wrong. This wrong, as we have already seen, rightfully and appropriately supports the second count, and of right, can have no place in the first count, without contributing to a double recovery; and for that reason, its consideration must be excluded altogether from the first count. It is not pretended, in the evidence, that plaintiff offered for shipment any other railroad ties except these "seven carloads," mentioned in the second count, and it is expressly admitted that defendant received and shipped all the ties actually offered or tendered by plaintiff for shipment.

It only remains to enquire what competent evidence, if any, was offered to support the second alleged wrongful act or acts of defendant, by which it is claimed that it prevented the plaintiff from fulfilling his said contract, or compelled him to abandon the same. How far and to what extent, if at all, this contention is sup-

ported by the evidence depends altogether upon the following testimony, which is all that is found in the record touching that point. · The plaintiff, testifying on this branch of the case, was asked the following questions, and gave the following answers :

Q. " State what passed between you and the agent at Versailles, the agent of the Missouri Pacific Railway Company."

A. "After we got a few ties out, the Pacific railroad hands came in and took possession of the yards. They ordered us out and shoved us out." Objected to.

By the court : " You must prove that these parties were the agents of Missouri Pacific Railway Company before the witness can state what was said."

Q. " Were these conversations that you had there, were they with the agents of the Pacific Railroad ? "

A. " I talked with Mr. Moran, he was the station agent there."

Objected to, "because you cannot prove an agency in that way by the witness. It is a question for the jury."

By the court: " Let him tell what they did and what this defendant did in regard to this agency matter."

Q. "I will ask you, Mr. Spurlock, what these parties were doing around there ? "

A. " They were buying and shipping ties."

Q. " I will ask you, then, the further question. State, if you know, who they were buying ties for ? "

A. "For the Missouri Pacific Railway Company."

Mr. Andrews : " Of your own knowledge ? "

A. " The depot men told me that they were. (And I know they have taken exclusive possession of the tie yards and have held it)."

Objected to on the ground that the depot men cannot bind the company.

By the court : " You must prove that these men

were agents of the company, authorized to buy these ties."

Q. "Well, what did you do after that?"

A. "Well, gentlemen of the jury, after I was crowded out of the yards, I went to Mr. Moran, who had the Pacific yards in control, and I told him of the fact that they had forbidden me to come in there, and that I would lose my contract with Mr. Sedgwick, and wanted him to let me ship my ties out. He said, 'I would help you if I could, but under my orders I cannot.' Then I pulled up and quit because I could not get my ties up to the yard and had to go off one hundred yards or something like that, and after they were inspected, I had to haul them a second time. I was only able to get seven carloads out during the month of June, that is all I could get shipped and I pulled out and quit the entire business."

On cross-examination, the plaintiff was asked the following questions and gave the following answers:

Q. "What do you mean when you talk about tie yards? Is there any particular place in that yard for ties?"

A. "Yes, sir."

Q. "You could get at the ties with your team?"

A. "Yes, sir, with the first I reckon we got within thirty feet of the cars. The first ties were pretty close to the track, but the last a hundred yards off."

Q. "Did one man take a tie and put it on the car?"

A. "Yes, sir, generally one negro; some of them, I suppose, it took two, most of them I think one man did."

H. T. Bond, a witness for plaintiff, being asked to state what he knew about the question at issue, answered, in substance, as follows: "I bought some ties for Shapman & Company, after Stephens, Spurlock, and Clark quit the business, and then Thomas, a contractor

for the Missouri Pacific Railway Company, came into the tie yards and has been shipping ever since exclusively. Thomas came in before the others quit, and they quit because he came in. The Missouri Pacific Railway Company shipped out a large quantity of ties from June, 1880, to June, 1881."

From this it will be seen that the vital question before the court and jury was, whether the parties thus crowding or shoving plaintiff out of the tie yards were the agents or employes of defendant in buying and shipping railroad ties on its account. It is manifest that the plaintiff's own testimony failed to furnish this proof; and it is equally clear that Bond's evidence, of itself and without more, supplied no competent evidence that "Thomas, a contractor for the Missouri Pacific Railway Company," was the agent or employe of the defendant, in buying and shipping the ties in question. The clear and only import of this testimony without more is, that Thomas was an independent contractor with the company, to furnish it with railroad ties for pay, at such point or points as his contract in that behalf called for. If so, said Thomas, in such transaction, is to be regarded as a patron of the road, with the right to buy and ship ties to defendant at such point or points as required by his contract in that behalf; and not as an agent or employe of defendant in the sense claimed by plaintiff. But, as such patron, it may be added, that he is not entitled to any discrimination in his favor to the prejudice of others. *Railroad v. Reese*, 18 A. & E. R. R. Cas. 110, and cas. cit.; *Hughes v. Railroad*, 15 A. & E. R. R. Cas. 100, and cas. cit.

If that be so, of which there is no room for question, there was no evidence that defendant "refused or failed to furnish plaintiff reasonable, proper, and fair shipping facilities, and thereby prevented him from shipping his ties, and receiving said profits," as charged in the first count, and in that event, the court erred in

refusing the demurrer to the evidence as to the first count. If, indeed, the parties thus crowding plaintiff out of the tie yards are the agents or employes of defendant, no reason is seen why plaintiff might not have established that fact by competent testimony. These parties, themselves, certainly knew whether they were agents or employes of defendant. They were competent witnesses and might have been called to establish the fact, if such it was. There is nothing to show they were unknown to plaintiff, out of the state, or their whereabouts unknown. Why they were not called does not appear. If plaintiff will go to trial without the use of proper diligence, or in the absence of competent evidence to establish any fact, necessary to his recovery, of which the law presumes him advised, it is, to say the least of it, his misfortune if not his fault.

Again, whether the plaintiff had the right, in his own language, " to pull up and quit (or abandon his contract with Sedgwick) because he could not get his ties up to the yards ; and had to go off one hundred yards, or something like that, and, after having them inspected, had to haul them a second time," is a question of law, on which the court had to pass, in deciding the demurrer. In passing on such an instruction, the court must not only have regard to the evidence adduced, but also to the pleadings in the cause, and if, in view of both or either, plaintiff is not entitled to a verdict, the instruction should be given. To refuse the instruction, under the pleadings and evidence, is to hold, as a matter of law, that the plaintiff had the right without more " to pull up and quit because he could not get his ties up to the yards, and had to go off one hundred yards, or something like that, and after they were inspected, had to haul them a second time."

We are not prepared to hold that such a wrong, on the part of the defendant, without more, in a case like

the present, would justify the plaintiff in abandoning his contract with Sedgwick, and render it liable in damages for the profits plaintiff might have realized if he had gone on and completed the same. If the plaintiff was liable, as we have seen, for the wrongful act of extorting exorbitant rates of freight on the shipments actually made under this contract, no reason is seen why, in like manner, it would not be liable to plaintiff, in a proper action, to compensate him in damages for the trouble, annoyance, labor, and expense of thus depositing his ties, in the first instance, and again hauling them a second time. If so, might he not, and under the evidence before us, if that was all, ought he not, to have gone on with his said contract with Sedgwick, and resorted to defendant in a separate action for the loss and damage thus wrongfully imposed upon him ?

While this is so, it must not be inferred that the plaintiff, in a case like the present, might not, by proper pleading and evidence, show himself entitled to abandon the contract and look to the defendant for damages necessarily and properly resulting therefrom. If the defendant, in such a case, refuse to receive or ship his ties, when properly tendered ; or by any other wrongful act, or conduct, render it clearly impracticable, if not impossible, for the plaintiff to comply with said agreement, in the ordinary and usual course of business, incident to such transactions, then and in such like cases, plaintiff may abandon the same, and look to defendant for the damages proximately and necessarily resulting therefrom. The pleadings and evidence now before us do not, in our judgment, properly make such a case. We are, therefore, of opinion, and so hold, that the trial court erred in refusing the instruction in the nature of a demurrer to the evidence, as to the first count of the petition.

So far as the second count is concerned, there is no merit in the objection as to the admissibility of the bills

of lading, or other evidence, in the cause, nor do we find any error in the instruction, or other ruling of the court, applicable to this second count calling for our interference, and for these reasons, the judgment of the circuit court on said second count, is affirmed. As to the first count, we may premise that, in view of the conclusions already reached, and the uncertainty as to what may be the evidence and instructions upon a retrial of the cause, we deem it unnecessary to consider the instructions now before us applicable to said first count, as well as other questions suggested in the record and brief of counsel.

But, for the reasons hereinbefore stated, we are of opinion, and so hold, that the judgment of the trial court, as to the first count, ought to be reversed, and the cause remanded ; and it is accordingly hereby so ordered, in which all the judges concur, except Brace, J., who dissents.