## MOLLIE BELLE BLANCHARD v. ALLEN DORMAN et al., Plaintiffs in Error.

Division One, July 12, 1911.

1. **ABSTRACT OF RECORD: Writ of Error.** The abstract of the record in a cause brought to the Supreme Court by writ of error need not show the granting and issuing of the writ of error, notice to respondent and the return of the writ.

2. **BILL OF EXCEPTIONS: Term Bill: Partition.** Exceptions die with the term unless their life is preserved by a bill of exceptions filed during the term or afterwards by leave then granted. In the case under review an interlocutory decree for partition was rendered at one term, and commissioners were

appointed at that term to divide the property, but no bill of exceptions was then filed, nor any leave taken, nor stipulation or agreement made or filed for the extension of the time for filing it beyond the term; nor was any motion for new trial filed at that term. Under these circumstances all exceptions taken at that term were abandoned.

3. EXCEPTIONS: Motion for a New Trial. Matters of exception which are required to be presented to the trial court upon motion for a new trial, cannot be considered by the Supreme Court unless the motion for a new trial is set forth in the bill of exceptions, or unless said bill of exceptions contains a direction to the clerk to copy such motion, and it is copied into the record sent up to the appellate court.

4. PLEADING: Amended Petition: Change of Venue. The description of land in the petition in a partition suit may be amended after transfer of the case by change of venue to another county, by filing a proper amended petition in the circuit court of the second county.

5. ————: ————: Departure: Waiver. By answering the amended petition and going to trial on the issues there raised, defendants waive their right to raise against an amended petition the question of departure from the original cause of action.

6. ATTORNEYS' FEES: Allowance: Bill of Exceptions. The allowance of attorneys' fees requires no formal motion, and it is not required to be made at the time of or before the judgment is rendered, or before the filing of a motion for a new trial, nor is it one of those matters which are required under our practice to be presented in the motion for a new trial. But it is such a matter as, to be reviewable, is required to be brought into the record by bill of exceptions.

Error to Cass Circuit Court.—*Hon. N. M. Bradley, Judge.*

AFFIRMED.

*S. P. Dorman, G. W. Sloan* and *John A. Gilbreath* for plaintiffs in error.

(1) "Petition for partition shall be filed in the circuit court of the county in which such lands, tenements or hereditaments lie." R. S. 1909, sec. 2650.

236 Sup.—27

(2) "The statute directing in what counties partition suit is to be brought is mandatory, and not simply directory." Johnson v. Detrick, 152 Mo. 255. (3) Cass circuit had no jurisdiction of the subject-matter. The court in Cass county could not originally entertain jurisdiction over lands in Henry county, and only acquires jurisdiction of certain specific lands on a change of venue, and not to all and singular the lands in Henry county after change of venue. Hope v. Blair, 105 Mo. 85; Johnson v. Detrick, 152 Mo. 243; Bray v. Marshall, 66 Mo. 123; Snitjer v. Downing, 80 Mo. 588. Even though Fields v. Malony, 78 Mo. 172, has been criticised and overruled in a sense by Scheitd v. Crecelius, 94 Mo. 322, yet both are in harmony with the above proposition and with the case at bar. (4) "It is competent for a party to confer jurisdiction on a court of his person, but he can neither by consent nor conduct confer on a court jurisdiction of the subject-matter; the law alone confers this jurisdiction." Bookowitz v. Guthrie, 99 Mo. App. 310; Parker v. Zeisler, 139 Mo. 298; Johnson v. Detrick, 152 Mo. 243. (5) Abandoned pleadings: their sole and only purpose. Tichnor v. Voorhies, 46 Mo. 110; Cockerill v. Stafford, 102 Mo. 57; Rubelman v. McNichol, 13 Mo. App. 584; Kortzendorfer v. St. Louis, 52 Mo. 204; Breckenkamp v. Rees, 3 Mo. App. 585; Machine Co. v. Pierce, 5 Mo. App. 575; Corley v. McKeag, 9 Mo. App. 38; Young v. Woolfolk, 33 Mo. 110; Rand v. Grubbs, 26 Mo. App. 591. (6) A new description of the land changes the cause of action. Bricken v. Cross, 163 Mo. 449; Bricken v. Cross, 140 Mo. 166; Lilly v. Tobbein, 103 Mo. 477; Hall v. School Dist., 36 Mo. App. 21; Courtney v. Blackwell, 150 Mo. 271; Flanders v. Cobb, 51 Am. St. Rep. 429; Stevenson v. Mudgett, 34 Am. Dec. 158; Carpenter v. Gockin, 21 Am. Dec. 566; Laughlin v. Leigh, 226 Mo. 620. (7) The petition governs and not intent of pleader. Sturges v. Botts, 24 Mo. App. 287; Powell v. Shipps, 85 Mo. App.

467; Brennan v. McMenamny, 78 Mo. App. 122. (8) The court having no jurisdiction, an appeal or writ of error prosecuted from final judgment in petition brings up for review all questions in the cause. Aull v. Day, 133 Mo. 337; Ess v. Griffith, 128 Mo. 50; Tarkio v. Clark, 186 Mo. 294; Collier v. Lead Co., 208 Mo. 247. (9) "Consent of parties cannot give jurisdiction where the law has not conferred it and the question of a court's jurisdiction of the subject-matter is never settled until it is settled right." Shohoney v. Railroad, 223 Mo. 649; Davidson v. Ins. Co., 226 Mo. 1; State v. Muench, 225 Mo. 210. (10) This litigation was controversial and the parties were genuine adversaries contending for substantial rights. Therefore the taxation and assessment of the fee of $1000 for attorney of the plaintiff as costs in the case to be apportioned between plaintiff and defendants in the partition suit was illegal, wrong, improper, unjust and excessive and not taxable against defendants. Liles v. Liles, 116 Mo. App. 413; Donaldson v. Allen, 213 Mo. 301.

*R. T. Railey* and *Peyton A. Parks* for defendant in error.

(1) There is nothing before this court for review, except the record proper. Nothing can be considered in the way of exception which is not either set out or called for in the bill of exceptions. Betzler v. James, 227 Mo. 387; Barnham v. Shelton, 221 Mo. 71; Reed v. Colp, 213 Mo. 588; State v. Handley, 144 Mo. 118; Ryan v. Growney, 125 Mo. 480; Nichols v. Stevens, 123 Mo. 96; State v. Catlin, 98 Mo. 672; Coy v. Landers, 146 Mo. App. 419; State v. Leichtman, 146 Mo. App. 296. (2) Questions relating to the original petition, as well as to the first and second amended petitions, and all proceedings up to the time of the rendition of the interlocutory decree herein at the

May term, 1906, cannot properly be considered as a part of the record in this cause, for the reasons following. 1. Because none of said pleadings are set out or called for in defendants' bill of exceptions. 2. The filing of the third amended petition was an abandonment of all of the other petitions and the latter, by reason thereof, no longer remain a part of the record without again being introduced in evidence and by being set out or called for in the bill of exceptions. No bill of exceptions having been filed during the May term, 1906, of the circuit court of Cass county, there is nothing for review before this court concerning said proceedings: Ingwerson v. Railroad, 205 Mo. 335; Walker v. Railroad, 193 Mo. 472; Bobb v. Bobb, 89 Mo. 418. 3. Neither the original nor the first or second amended petitions, nor the motion to dismiss or to correct the record were ever called for or incorporated in any bill of exceptions and filed in the court below at any time, much less during the term at which said proceedings were had, or prior to the rendition of the interlocutory decree referred to in the record. Therefore, no bill of exceptions having been filed at the same term at which the proceedings occurred, this court cannot review any action of the circuit court in reference to said matters. State v. Holman, 132 S. W. 696; State v. Lawler, 220 Mo. 26; State v. Jackson, 209 Mo. 398; State v. Harroun, 199 Mo. 258; State v. Goehler, 193 Mo. 177; State v. Larew, 191 Mo. 192; State v. Miller, 189 Mo. 673. 4. Because defendants have attempted to have this cause reviewed upon a writ of error after the appeal was dismissed. A writ of error, even if properly sued out and due notice given, can only bring up for review the final judgment rendered in the cause. Hence, as no bill of exceptions was taken or filed in respect to any matters which occurred prior to the rendition of the interlocutory decree, there is nothing for review before the court in regard thereto. Padgett v. Smith, 205 Mo. 124; Glass

Co. v. Peper, 96 Mo. App. 595; Kroeger v. Dash, 82 Mo. App. 332. (3) Since the defendants have failed to show that the bill of exceptions was signed and filed within the time required by law, there is nothing for review before this court except the record proper, if the latter can be considered on the record presented. Milling Company v. St. Louis, 222 Mo. 306; Pennowfsky v. Coerver, 205 Mo. 136; Harding v. Bedoll, 202 Mo. 631; Harris v. Wilson, 199 Mo. 414; Everett v. Butler, 192 Mo. 564. (4) The land is located in Henry county, Missouri, and the partition suit was commenced in the circuit court of that county. If the land was misdescribed, or if other land not included in the original petition was mentioned herein, the circuit court of Henry county would undoubtedly have had jurisdiction to authorize an amended petition, containing a correct description, to be filed. If the circuit court of Henry county had jurisdiction of the subject-matter and of the person, on change of venue to Cass county it transferred to the circuit court of the latter county the same jurisdiction which formerly existed in the Henry county circuit court. Stearns v. Railroad, 94 Mo. 322; Hughes v. McDivitt, 102 Mo. 84; Spurlock v. Railroad, 104 Mo. 660; Real Estate Co. v. Lindell, 133 Mo. 395. (5) (a) An amended petition can be filed in court where cause is pending on change of venue. Hughes v. McDivitt, 102 Mo. 83. (b) The case of Fields v. Maloney, 72 Mo. 172, holding to the contrary, has been expressly overruled in this State. Stearns v. Railroad, 94 Mo. 322; Hughes v. McDivitt, 102 Mo. 84; Spurlock v. Railroad, 104 Mo. 660; Real Estate Co. v. Luedell, 133 Mo. 395. (6) (a) Even though the original petition in this cause did not properly describe the land, yet the trial court had the power to permit an amendment in the petition so as to correctly describe the land in controversy. Callaghan v. McMahaw, 33 Mo. 111; Sage v. Tucker, 51 Mo. App. 336; Spurlock v. Railroad, 104 Mo. 658; Timber Co. v.

Cooperage Co., 112 Mo. 383; Menefee v. Beverforden, 95 Mo. App. 105; Callaghan v. Miller, 33 Mo. 111. (c) Where a petition misdescribes the judgment, but the answer admits its existence and properly describes it, the misdescription of the petition is not a valid objection to its amendment. Menefee v. Beverforden, 95 Mo. App. 105. (7) (a) By answering over, after the overruling of their motion to strike out plaintiff's last amended petition, on the ground that it was a change in the cause of action from the prior petition, and going to trial upon the merits of the issues raised by the last amended petition and the answer thereto, appellants waived such objection, even though it had been preserved in a timely bill of exceptions. Hubbard v. Slavens, 218 Mo. 616; Flowers v. Smith, 216 Mo. 98; White v. Railroad, 202 Mo. 561; Hudson v. Cahoom, 193 Mo. 557; Spurlock v. Railroad, 104 Mo. 658; Real Estate Co. v. Lindell, 133 Mo. 395, overruling Fields v. Maloney, 78 Mo. 172, and approving Stearns v. Railroad, 94 Mo. 317; Hughes v. McDivitt, 102 Mo. 77; Spurlock v. Railroad, 104 Mo. 658. (8) (a) Defects in petition are cured by answers and cross-bills, under the common law rule of "express aider." Grace v. Nesbitt, 109 Mo. 15; Hughes v. Carson, 90 Mo. 402; Garth v. Caldwell, 72 Mo. 629; Menefee v. Beverforden, 95 Mo. 105; Cockrell v. Warner, 14 Ark. 358. (9) All pleadings and proceedings in partition of real estate shall be had as in ordinary civil actions. The bill of exceptions must be filed at the term of the court at which the alleged errors occurred, or subsequently within the time allowed by the court for that purpose. R. S. 1909, sec. 2565; Simpson v. Scroggins, 182 Mo. 560; Smith v. Baer, 166 Mo. 401; Moore v. Transfer Co., 226 Mo. 889; State v. Larew, 191 Mo. 192; St. Louis v. Lawton, 189 Mo. 474; White v. Railroad, 202 Mo. 557; State v. Taylor, 134 Mo. 109; State

v. Ware, 69 Mo. 332; State v. Lawler, 220 Mo. 26; State v. Goehler, 193 Mo. 177; State v. Harrom, 199 Mo. 258; State v. McCune, 209 Mo. 399. (10) (a) A bill of exceptions filed in time is the only depository known to the law where matters of mere exception can be preserved. Unless such bill shows exceptions to the particular ruling or judgment of the court, taken at the time of and to such ruling or judgment, the alleged errors on that account are deemed to be waived, notwithstanding the complaining party may thereafter file his motion for rehearing or new hearing. Nichols v. Stevens, 123 Mo. 119; State v. Taylor, 134 Mo. 136; Critchfield v. Linville, 140 Mo. 192. (b) Filing a motion for a new trial and excepting to the order overruling it, do not dispense with the necessity of saving exceptions to the previous rulings whose propriety is questioned. Lumber Co. v. Tie Co., 96 Mo. App. 57; Newton v. Newton, 162 Mo. 173.

BROWN, C.—This suit was instituted in the circuit court of Henry county to partition certain lands in that county, described as follows: "Thirty-six acres part east half lot two, northwest quarter; seven acres part southwest fourth of the northwest quarter; twenty-seven acres part northwest fourth of the northwest quarter all in section three, township forty-one, range twenty-six. One hundred and sixty acres southeast quarter section seven; eighty acres west half of the southwest quarter of section eight; forty acres the southwest quarter of the northwest quarter of section sixteen; all in township forty-two, range twenty-six."

The petition was an ordinary one for statutory partition, in which it was stated in substance that Rebecca J. Dorman died intestate in said county on the 17th day of April, 1889, seized of said lands and leaving as her only heirs at law her daughters, Lula E. Davis, Virginia Dorman Golden, Mollie B. McNeel,

and her sons, the defendants Allen Dorman, George W. Dorman, Sterling P. Dorman and John B. Dorman; that the said Lula E. Davis had conveyed to the other heirs named her undivided interest as heir at law of Rebecca Dorman, in said lands, and that after said conveyance and on June 17, 1900, Virginia Dorman Golden died intestate, leaving the plaintiff her sole heir at law, and that the plaintiff and defendants were tenants in common and in possession each of an undivided one-sixth of said lands.

The prayer was for partition in kind and general relief.

This petition has been the subject of much discussion. The transcript made by the clerk of the circuit court of Henry county on change of venue to Cass county purported to contain a copy of it in which the two hundred and eighty acres of land in sections seven, eight and sixteen, in township forty-two were described as in range twenty-six. The original petition was stated in the transcript to have been lost. The original petition was in court and offered in evidence after the entry of the interlocutory decree of partition and described the land as being in range twenty-seven, which is the description incorporated in the abstract of record of the plaintiffs in error.

No process was issued or service had in this case until July 8, 1902, when the defendant Allen Dorman filed in the Henry Circuit Court a petition of his own against all the other parties in the first mentioned case for the partition of the same land, after which service was had in both cases and, at the January term, 1903, of the Henry Circuit Court, the case in which Allen Dorman was plaintiff was by order of the court, without objection from either party, consolidated with the original case brought by Mrs. Blanchard under the number of the latter, which was 128 on the docket, and in the same order it was provided "that plaintiff's

counsel in each of the above entitled causes, have fee allowed in said cause, equally divided.''

An amended petition was filed by Mrs. Blanchard in the Henry Circuit Court on May 13, 1903, in which the tract of land first described in the original petition was described as ''tract No. 2, known as the old Wash Hancock homestead in Clinton Township, Henry County, Missouri, . . . containing seventy-one acres, being the land conveyed by George W. Hancock to Rebecca J. Dorman by deed dated November 27, 1880, recorded on page 566 of deed book 30 of the deed book records of Henry county, Missouri.''. This description mentions neither section, township nor range. The other tract is described as ''tract No. 1, the Dorman farm in Honey Creek township, Henry county, Missouri, described as the southeast quarter of section No. seven (7), and the west half of the southwest quarter of section No. eight (8), and the southwest fourth of the northwest quarter of section No. sixteen (16), all in township No. forty-two (42), of range No. twenty-seven (27) containing in all 280 acres, more or less.'' This petition further stated in substance that from the death of Mrs. Dorman each of her heirs was the owner of an undivided one-seventh interest of the lands described, and recognized the interest of the others, until about the first day of March, 1900, when Mrs. Davis sold her said interest to the defendants George W. Dorman, Sterling P. Dorman, Mollie B. McNeel and John B. Dorman and Mrs. Golden for twelve hundred dollars ($1200), pursuant to which sale Mrs. Davis and her husband, Charles W. Davis, conveyed said interest to the parties named.

It was further stated that the defendants Sterling P. Dorman, John B. Dorman, Allen Dorman and George W. Dorman had been in possession of said lands during the years since and including 1900, and collected rents of which they claimed to have applied a portion to the payment of the amount promised to

be paid to Mrs. Davis for her interest, of which she and her husband claimed that a large portion still remained due and unpaid for which they were entitled to a vendor's lien on the land. It will be noted that the conveyance of Mrs. Davis and husband, pleaded in this petition, did not include Allen Dorman, so that his interest is stated to be an undivided one-seventh of the land, and the interest of each of the other owners, plaintiff and defendants, an undivided six thirty-fifths, and that division could not be made in kind.

The prayer was for an accounting by the Dormans with respect to the rents and profits, that the amount due Mrs. Davis be determined, and that the land be sold and the proceeds distributed among the parties according to their respective rights and interests, and for general relief.

Lula E. Davis and her husband, Charles W. Davis, were made parties to this petition and were duly brought in by summons.

On September 12, 1902, all of the then defendants filed separate answers to the original petition. All except that of George W. Dorman were identical, admitting the title of Rebecca J. Dorman at the time of her death, in all the lands described in the petition, except the seventy acres in township forty-one and stating that Mrs. Golden at the time of her death had received advancements from the estate of her mother to the amount of $1850.25, which was more than her entire interest in the estate. They also stated the sale by Lula E. Davis of her interest in the estate, to Mrs. Golden, John B. Dorman, Sterling P. Dorman, George W. Dorman and Mollie B. McNeel, who executed their two joint and several promissory notes to her in payment of the purchase price of twelve hundred dollars, one of said notes being for the sum of eight hundred dollars, bearing interest at 7 per cent, and one for four hundred dollars, bearing interest at

8 per cent, upon which about eleven hundred dollars still remained due and unpaid, and that the plaintiff by her written contract with Mrs. Davis had ratified the purchase and assumed the liability of her mother on the notes. The prayer was that the plaintiff be required to bring her advancements into hotchpot with the said real estate as required by section 2913, Revised Statutes 1899, and that this proceeding be stayed until the promissory notes given for the purchase price of the interest of Mrs. Davis should be paid or secured by a lien on the said land.

The answer of George W. Dorman was identical, except that in addition to the statements contained in the other answer he asserted and claimed the absolute ownership of the seventy or seventy-one acres in township forty-one.

On July 31, 1903, the defendants filed in the Henry Circuit Court separate answers to the amended petition which were practically identical with those filed to the original petition, except that George W. Dorman pleaded his title to the seventy-one acres called the Wash Hancock homestead by warranty deed from Rebecca J. Dorman and her husband Mathew Dorman.

In this answer the Dorman farm of two hundred and eighty acres was described as being range twenty-six, which seems to be the first time that the proper description of this tract had been used in the case. The pleading being in this condition the cause was called for hearing in the Henry County Circuit Court on November 25, 1904, when Judge Graves of that court announced that he was disqualified to try it, and "by consent of all parties concerned," a change of venue was awarded to the circuit court for Cass county in the 17th Judicial Circuit, and thereupon a transcript was made by the clerk of the Henry County Circuit Court and on March 21, 1905, was filed in the circuit court for Cass county.

On the same day the plaintiff filed in the latter court a second amended petition in all respects like the first, except that the Dorman farm was described as being in Field's Creek township instead of in Honey Creek township, Henry county, Missouri. On April 6th Allen Dorman filed in the office of the clerk of the Cass County Circuit Court an order for the dismissal of the cause of Allen Dorman against Mollie Belle Blanchard and others, and the cost being paid by him, the order of dismissal was entered, and that cause was unwound from the principal case of Blanchard against Dorman, and thereafter Allen Dorman was content to maintain the attitude of simple defendant.

During the May term, 1905, of the Cass Circuit Court the defendants filed their motion to strike out the first count of the second amended petition which referred to the Dorman farm, on the ground that it contained and set up an entirely new and different cause of action from that stated in the original petition, substituting a new cause of action therefor, in that while the land sought to be partitioned in the original petition was described as being in range twenty-six, that described in the first count of the second petition was described as being in range twenty-seven.

Thereupon the plaintiff filed a third amended petition correctly describing the Dorman farm as being in range twenty-six, and charging that defendant George W. Dorman held the legal title of the Wash Hancock farm in trust solely for the use and benefit of the children of Rebecca J. Dorman, in fee.

The defendants at the same term moved to strike out the first count of the third amended petition, relating to the two hundred and eighty acres known as the Dorman farm, on the ground that it was a substantial departure from the original cause of action, and from the cause of action which had been theretofore stated in the several amended petitions, because

it related to different lands than those originally and previously described. Also to strike out the second count, because it set up a new and different cause of action concerning the Wash Hancock farm, in that it sought an accounting for rents and profits, and a decree that George W. Dorman held the whole of said land as a naked trustee without any beneficiary interest therein. This motion was continued from time to time until July 9, 1906, when it was taken up by the court and overruled, plaintiff at the same time dismissing the second count. To the action of the court in overruling the said motion, the defendants at the time excepted, and on the 15th day of August, 1907, filed a bill of exceptions thereto. There does not appear in the abstract any leave granted during the May term, 1906, to file this bill.

During the May term of the Cass Circuit Court and on July 11, 1906, the defendants filed their answers to the remaining count of the third amended petition, which were substantially like the ones already filed, admitting that Rebecca J. Dorman was at the time of her death seized in fee simple of the lands, and also setting out in connection with all allegations as to advancements to Virginia Dorman Golden the following contract:

"Clinton, Missouri.

"This Indenture made this day, January 14, A. D. 1882, with willing consideration by and between V. D. Golden, Allen Dorman and G. W. Dorman. That all moneys received by V. D. Golden from the R. J. Dorman estate, is to be kept by her and held in readiness for buying additional 40 acres. It to be her share. She is to have, as part of her share (and free from her husband's use) the 40 acres of land in Bear Creek township, already purchased, which cost $650, and which was paid for with the money from the two car loads of cattle, thirty-two (32) head, that brought

$23 each, the property of R. J. Dorman, the $39 received last year is to be included, but money from chickens, turkeys, eggs and butter is not to be included, as they are to be her share of profits from the R. J. Dorman estate until the 40 acres are bought.

> "V. D. GOLDEN,    (Seal)
> "ALLEN DORMAN,    (Seal)
> "G. W. DORMAN.    (Seal)"

These answers contained an itemized statement of alleged advances, amounting to two thousand four hundred fifty dollars and twenty cents.

The plaintiff replied generally and went to trial on the same day and, after hearing the evidence, the court entered an interlocutory decree, stating an accounting between the several parties of the matters contained in the pleadings and proceedings as follows:

"It is therefore considered, ordered and decreed by the court that the defendant Lula E. Davis have and recover of the plaintiff Mollie Belle Blanchard and from the defendants George W. Dorman, Sterling P. Dorman, John B. Dorman and Mollie B. McNeel, the aggregate sum of six hundred fifty and 45-100 dollars, being the sum of one hundred thirty and 9-100 dollars for each of said parties and that the same be and is hereby declared to be a vendor's lien upon the undivided one-seventh interest in said real estate so conveyed by the said Lula E. Davis as above found and decreed, and that in default of payment by the said Mollie Belle Blanchard, Sterling P. Dorman, John B. Dorman, George W. Dorman and Mollie B. McNeel, or either of them, of their respective pro rata part of said unpaid purchase price, the tract so assigned to such party or parties as shall fail to pay shall be sold to pay the same and that special execution issue therefor to enforce said vendor's lien.

"It is futher considered, ordered and decreed by

the court that defendant John B. Dorman account for and pay over to the other parties to this cause in accordance to the foregoing findings the respective sums so found to be due from him to said parties respectively on said accounting and that the defendant George W. Dorman, Mollie B. McNeel and the plaintiff Mollie Belle Blanchard pay to the defendant Sterling P. Dorman the sum of fifty-eight and 61-100 dollars, so found to be due from them respectively and that said sums are each hereby declared and decreed to be a lien upon the lands assigned to said respective parties in partition, and that said Sterling P. Dorman pay to said Allen Dorman said sum of fifty-nine and 40-100 dollars.''

It also appointed commissioners to make the partition and report at the next term.

No bill of exceptions was filed at this term nor was any leave taken for that purpose.

The commissioners at the next term, and on the first day of December, 1906, made their report, with which they returned a paper signed by all the defendants, in which they requested that in case partition should be finally granted their interest in said lands should be set apart to them jointly, and after the formal parts the report proceeded as follows:

''We assign and set apart unto the plaintiff Mollie Belle Blanchard, as her share in the real estate as described in the decree of partition, the following proportion thereof, to-wit: ''The southwest fourth of the northwest quarter of section number sixteen in township forty-two, range twenty-six, Henry County, Mo., to have and to hold the same in fee simple. And said forty acre tract being less in value then the share of said Mollie Belle Blanchard in all said real estate under said decree and all the parties to this suit now agreeing that the difference in value shall be paid in money in the sum of two hundred eighty dollars instead of setting apart more land out of the residue

of said lands to plaintiff Mollie Belle Blanchard, as such setting apart would damage the residue of the tract, and we report that the defendants, save Lula E. Davis and Charles W. Davis, pay to plaintiff said sum of two hundred eighty dollars in lieu of such additional land in pursuance of such agreement and request of all parties.

"And we assign and set apart unto the defendants Allen Dorman, Sterling P. Dorman, John B. Dorman, Mollie B. McNeel and George W. Dorman, the following proportion of said real estate described in said decree of partition, to-wit: "The southeast quarter of section seven and the west half of the southwest quarter of section eight, all in township No. forty-two, of range No. twenty-six, of Henry county, Missouri, in fee simple, to have and to hold in fee simple according to the interests as fixed by said decree in partition, subject, however, to the payment by said defendants to plaintiff of said sum of two hundred eighty dollars as the agreed excess in value of the tract assigned and set apart to defendants over the value of the tract assigned to plaintiff as agreed upon as above set forth.

"We further report that we value the entire tract of land described in the decree in partition, at the value of eleven thousand two hundred dollars, and that we were engaged one day in making partition of said real estate."

After this report was received the defendants again raised the question of departure from the original cause of action by motion to dismiss the decree, accompanied by the original petition which had been found and described the land as being in range twenty-seven, which motion was stricken out on motion of plaintiff; and no exceptions having been filed to the report of the commissioners the court proceeded, at the same term and on December 10th, to enter its final judgment, approving the report and rendering

judgment in favor of the plaintiff and against the defendants for two hundred eighty dollars, and that in default of payment thereof the land set apart to defendants should be sold to pay the same, and that special execution should issue therefor, and also ordered special execution in case of default in making payments provided in the interlocutory decree.

The court also, in its final judgment, after hearing evidence, allowed and taxed, in favor of Peyton A. Parks, one thousand dollars for his fee as attorney in the case, made that amount a lien on the partitioned land, and ordered execution therefor. In this inquiry, on December 10, 1906, Mr. Parks was sworn as a witness in his own behalf, and testified that in his judgment the fee ought to be a thousand dollars, adding: "If it had not been contested I would have said somewheres in the neighborhood of half that amount. Our custom and our practice would probably have been about half that amount." The defendants, although present by counsel when this hearing was called, did not take part in it, and made no objection to the allowance. The judgment stated that they announced in open court that they did not desire to contest it.

On December 12, 1906, the defendants filed their motion in arrest of judgment challenging the jurisdiction of the court in the case, and also in the allowance of the attorney's fee; and on the same day they filed their motion for a new trial. It is not necessary, under the view we take of the whole case, to set out either of these motions, which were continued to the January term, 1907.

At the January term the defendants moved to correct the entry of the judgment at the September term allowing the attorney fee, by striking out the statement that they announced in open court that they did not desire to contest it, and to retax the fee. This seems to have been overruled, but is not incorporated

236 Sup.—28

in the bill of exceptions either by copying, direction to the clerk to copy, or by any other reference to it. The motions for a new trial and in arrest of judgment were also overruled at the same time.

The only identification of, or call for, either of these motions in the bill of exceptions, which seems to be set out in full in the abstract of the record, is the statement that the motions in arrest and for a new trial were offered in evidence on a hearing of the motion to correct the entry of the judgment, that their introduction. was objected to and the objection sustained. Then follows the statement: ''For such motion for a new trial and in arrest of judgment, see Ab. of Rec., p. 75 and 76.'' And at the end of the bill of exceptions is the following: ''The court overruled the motion for a new trial. Defendants excepted. The court overruled motion in arrest of judgment. Defendants excepted.''

Leave was taken at the January term to file bill of exceptions, which was extended to August 15, 1907, on which date it was duly filed.

I. In entering upon the consideration of this case we are met by respondent at the front gate, with the assertion that there is nothing from which we are at liberty to ascertain that it was ever brought to this court. Although our records show that the writ of error was duly granted and issued, that notice of its issue was given to the respondent in ample time, and that it has been returned here by the clerk in all respects as provided by its terms and by section 853, Revised Statutes 1899, the respondent claims that because these facts are not set up in the abstract of the record filed in accordance with the terms of section 813, Revised Statutes 1899, and the rules of this court made in pursuance thereof, we cannot take notice of them so as to assume that we have the case before us.

This proposition, if seriously made, and we must

assume that it is, is founded upon a misapprehension of the statute requiring the abstract to be filed. It provides that within the time and manner prescribed by the rules of the appellate court, the appellant or plaintiff in error shall file a printed abstract of the entire record of the cause, and deliver a copy of the same to the respondent or defendant in error, who may, if dissatisfied with it, file an additional abstract, serving appellant or plaintiff in error with a copy thereof; "and in case the opposite party shall not concur in such abstract of record, he shall specify his objections thereto, in writing, and file the same with the clerk and serve the adverse party with a copy thereof, and thereupon the clerk of the appellate court shall forthwith issue and send an official order commanding the clerk of the trial court to send such appellate court a certified transcript of that part of the record so in dispute."

It is plain from the foregoing provision that the "abstract" referred to is an abridgment, for the use of this court, of the record of the trial court, to which final recourse must be had for its correction; but even were this not the case our rule only requires that so much of the record be set forth in the abstract as is necessary to a full and complete understanding of all the questions presented to this court for decision. If a question is suggested by the respondent or defendant in error upon a matter not so presented, the statute as well as the rule imposes upon him the burden of making it known to the court by bringing to its attention the true condition of the record, which in this case would have disclosed not only that the notice had been given, but that it was regular and sufficient in every respect.

II. Another preliminary question suggested by the record is whether or not the several matters of exception assigned as error have been properly saved

and brought before this court by bill of exceptions. ''It is now axiomatic that if a party desires this court to review any matter of exception on the trial, he must make his objection and save his exception at the time it occurs, and then repeat it in his motion for a new trial'' (State v. Hottman, 196 Mo. 110, 126), for we are not permitted to consider here any exceptions to any proceedings in the circuit court, except such as shall have been expressly decided by that court (R. S. 1899, sec. 864). The only way in which we are permitted to take notice of the decisions of the circuit court on such matters is by incorporating them in the record by bill of exceptions filed in time and manner required by the statute.

This case was tried and the interlocutory decree for partition was rendered at the May term, 1900, of the Cass County Circuit Court, and commissioners were appointed at that term to divide the property, but no bill of exceptions was then filed, nor was any leave taken, or stipulation or agreement made or filed for the extension of the time for filing it beyond the term, nor was any motion for a new trial filed at that term. Under these circumstances all exceptions taken during that term were abandoned. [Simpson v. Scroggins, 182 Mo. 560; Reineman v. Larkin, 222 Mo. 156, 165; St. Louis v. Lawton, 189 Mo. 474, 481; State v. Larew, 191 Mo. 192, 196, and cases cited.]

Simpson v. Scroggins, supra, was, like the case we are now considering, a suit in partition, and upon this point the court said: ''All the evidence in this cause was introduced at the August term, 1901, of the Polk County Circuit Court, including the deed and will, and it appears from the record before us that such evidence was not preserved by bill of exceptions, with objections and exceptions thereto duly filed at such August term, but an effort was made to do so at the subsequent November term. This cannot be done, and it is unnecessary to cite authorities on that proposition

which has been so uniformly recognized by the practice of the courts of this State. Hence, there is nothing before us but the record proper.''

Reineman v. Larkin, supra, was a proceeding for the assignment of dower, in which the trial was had principally upon the issue as to whether or not the plaintiff was the widow of the person who died seized in fee of the lands involved. The issues were found in her favor and she was adjudged entitled to dower, and commissioners were appointed who reported at the next term. The report was approved at that term and final judgment entered thereon. A motion for a new trial was filed and overruled, and a bill of exceptions filed, including such as were taken at the trial of the issue involved in the interlocutory decree, and the defendants appealed. In considering this same question Judge LAMM, who wrote the opinion of the court in this division, said: ''They were entitled to appeal from the final judgment, but such appeal does not bring up the evidence at the trial resulting in the interlocutory judgment at a former term and the exceptions saved to the admission of such evidence, unless both such evidence and exceptions were preserved by a timely term bill of exceptions.'' In St. Louis v. Lawton, supra, a proceeding to open a city street in which the appeal was taken after final judgment of condemnation upon the report of commissioners, the same question arose in this court, and Judge VALLIANT, in the opinion of the court, said: ''The bill of exceptions taken during the June term, 1901, undertakes to go back to the April term, 1900, and brings into it the order made at that term, and says 'to which action of the court this exceptor and defendant, the St. Louis Fair Association, then and there duly excepted.' But when the April term, 1900, closed and no bill of exceptions was filed then, or within an extension of time then granted, its book was sealed and the party cannot incorporate into a bill of exceptions covering the pro-

ceedings of a subsequent term that which should have been preserved in a timely term bill.''

There is an apparent relaxation of this rule in those cases where a motion for a new trial is filed at the same term at which the exception is taken and continued until another term (Riddlesbarger v. McDaniel, 38 Mo. 138; Givens v. Van Studdiford, 86 Mo. 149; Young v. Downey, 150 Mo. 317), and this applies as well to a motion to set aside an involuntary nonsuit. These cases, however, are not exceptions, but serve rather to illustrate the principle on which the rule is founded. It applies to those cases only in which, by the filing of the motion at the same term the decision of the very matter is suspended for further consideration, while still in the breast of the court for preservation in the manner provided by law. It does not revive a right which has already lapsed.

It thus appears that no matter of exception taken at any time before the first day of the September term, 1906, of the Cass Circuit Court has been preserved for our consideration.

At that term the final judgment approving the report of the commissioners was rendered, $1000 was allowed to Peyton A. Parks, one of the attorneys for the plaintiff, as his attorney fee in the case, and motions for a new trial and in arrest of judgment were filed and continued until the next or January term, 1907, when said motions were overruled, and the defendants were given until the May term, 1907, in which to file their bill of exceptions. At the said May term an extension of time was granted until the 15th day of August, 1907, at which time the bill, which appears to be set out in full in the abstract of record for plaintiffs in error, was filed. It contains no copy of either of these motions, both of which are, however, set out in full in another portion of the abstract, and makes no allusion to either of them excepting the bare fact that they were overruled, nor is there anything con-

tained in it which can be construed as a suggestion that the clerk copy said motions or either of them.

The statute in force at that time (Laws 1903, p. 105), and ever since, provided that "it shall not be necessary, for the review of the action of any lower court on appeal or writ of error that any pleading, motion, instruction or record entry in the case, . . . shall be copied or set forth in the bill of exceptions filed in the lower court: *Provided,* the bill of exceptions so filed contains a direction to the clerk to copy the same, and the same are so copied into the record sent up to the appellate court." So far as this section refers to the matter involved in this case it was enacted in 1885 (Laws 1885, p. 219). Theretofore it had been necessary that the party saving the exceptions should copy such papers in full into the bill before it was signed by the judge. The change was made to facilitate the work of the parties and counsel in preparing their case for review. It has since that time been frequently before this court for construction, and has been uniformly held to mean exactly what it says, that these matters of exception must be saved in the bill either by copying them in full or directing the clerk to do so, and there seems to be no reason for attempting to modify so plain a proposition, and one with which the bar has had so many opportunities to become familiar. [State v. Griffin, 98 Mo. 672; State v. Handley, 144 Mo. 118; State v. Revely, 145 Mo. 660; State v. Wray, 124 Mo. 542; State ex rel. v. Leichtman, 146 Mo. App. 295; State v. Ruck, 194 Mo. 416, 428; Hendricks v. Galloway, 211 Mo. 536, 556; Reed v. Colp, 213 Mo. 577, 583; Betzler v. James, 227 Mo. 375, 387.]

The record being in the condition indicated, our examination must be confined to the record proper, and such matters of exception, if any, as have occurred at or subsequent to the September term, 1906, of the

Cass Circuit Court, and are not required to be presented to the trial court upon motion for a new trial.

III. The plaintiff in error contends that the third amended petition filed in the Cass Circuit Court, was such a departure from the original cause of action as left that court without jurisdiction. If this be true, then, of course, the error is apparent in the record proper.

At the threshold of this inquiry we are met with a difference between the parties as to the state of the record, which in this case includes the original petition by which the third amended petition must be judged. The transcript upon which the case was transferred from the Henry Circuit Court to the Cass Circuit Court, while stating that the original petition could not be found, contained what purported to be a copy of it, which was framed upon the statute, and prayed the partition of both the farms described in the third amended petition, on which the case was tried. The Dorman farm was correctly described in this copy as being in section 26.

The original petition was found in the office of the clerk of the Henry Circuit Court after the entry of the interlocutory decree at the May term, 1906. Instead of proceeding to have the transcript corrected by the Henry Circuit Court, the defendants produced the petition in the Cass Circuit Court and asked that it might be corrected there, which was properly refused. The defendants, however, insist that they shall have the benefit of what seems to be admitted by the parties to be the truth; so that in this connection we will, without deciding the legal propriety of that course, assume that the record shows that the original petition misdescribed the Dorman farm by stating that it was in range 27. This description was continued in the first amended petition, which was filed in the Henry County Circuit Court, but in the answer to that

petition filed July 31, 1903, the defendants themselves described the same land correctly as being in section 26, without appearing to notice the discrepancy in that respect in the different pleadings.

It was in this condition of the pleading that the change of venue was taken, with the consent of all the parties entered upon the record, and the defendants claim that when the plaintiff afterwards, in the Cass Circuit Court, availed herself of the hint that they had given her with reference to the true description of that particular tract of land, and filed an amended petition accordingly, it ousted the jurisdiction of the last named court, so that its decree with reference thereto was void. While they do not dispute the plenary power of the Legislature to confer upon the circuit court of Cass county jurisdiction to hear and determine cases involving the title to lands in Henry county, they do intimate that no such power has been given by the provision of our code with reference to change of venue, unless in cases where the matters relating to the same land have been put in issue by definite pleading in the county in which it is instituted. In other words it is claimed that when a change of venue is taken the wings of the court are clipped, so that it is thereafter confined in its judicial flight to the boundaries of the particular land described in the petition transferred to it, even in cases in which the court where the suit was instituted would be at liberty to transgress those boundaries by amendment. This is a mistake. The statute under which the change is taken expressly provides that the cause shall be docketed in the court to which it is certified and "proceeded in and determined as if it had originated therein." [R. S. 1899, sec. 826.] It also provides (Id., sec. 824) "that after such change of venue, any pleading found insufficient upon demurrer or otherwise may be amended as in other cases."

It has been uniformly and consistently held ever since Stearns v. Railroad, 94 Mo. 317, which expressly overruled (p. 322) Fields v. Maloney, 78 Mo. 172, that the court to which a cause is transferred by a change of venue has the right, power and authority to proceed to final judgment in it "in the same manner to all intents and purposes" as if it had arisen in that county.

The dissenting opinion in Fields v. Maloney, which was expressly approved in Stearns v. Railroad, and which has since frequently met the approval of this court, said of the case then under consideration: "The effect of the change of venue, therefore, to all intents and purposes, was the same, so far as concerned the power of the Livingston Circuit Court, as if the land over which the controversy arose had been bodily transferred to Livingston county, and the territorial limits of that county had been enlarged by such addition. If the court whence the cause came could have allowed the amendment or the change of the cause of action, then so also could the court to which the cause was taken—or else the statute means not what it says, and the power of amendment is lost by reason of the change of venue which is an impossible supposition."

This doctrine has met approval in this court in many cases other than those above cited, including Hughes v. McDivitt, 102 Mo. 77, 84; Fears v. Riley, 148 Mo. 49, 61; Spurlock v. Railroad, 104 Mo. 658, and the same case, 93 Mo. 530. We cannot see why it should shock the imagination when applied to a case like this, where the title to land is involved. It is much more natural to suppose that the legislative power that grants jurisdiction over the land involved in the original suit to the court to which it is taken by change of venue, should also send with it jurisdiction over the affiliated rights of the parties, as broad as that from which it is taken, than that it should per-

mit a defendant by taking a change of venue to deprive his adversary of rights of amendment necessary to the full and complete relief to which he would be entitled in the jurisdiction where his case was instituted.

That it would have been proper for the Henry Circuit Court to permit the amendment does not admit of doubt. One of the most common grounds for amendment to a pleading is to correct a mistake in the description of the subject-matter of the litigation, and such mistakes occur nowhere more frequently than in the technical description of lands. This question came before this court at an early day in Callaghan v. M'Mahan, 33 Mo. 111, in which it was decided that the plaintiff might, after the evidence was closed and the cause submitted, but before the entry of final judgment, change the description of one of the two tracts of land against which he was attempting to enforce a resulting trust, so as to make it cover a different tract from that included in the first description. That case covers this point perfectly. There, the amendment was made after the trial, and upon the suggestion of the court that the evidence had shown that there was a mistake in the description contained in the petition. Here the amendment was made at the suggestion of the defendants now complaining of it, by tendering in their answer the correct description of the Dorman farm. Had the court not permitted this it would have been error. [Noyes v. Richardson, 59 N. H. 490; Leeds v. Lockwood, 84 Pa. St. 70.] The defendants have also waived their right to raise the question of departure from the original cause of action by answering the third amended petition and going to trial on the issues thus raised. [Scovill v. Glasner, 79 Mo. 449; Sauter v. Leveridge, 103 Mo. 615; Holt County v. Cannon, 114 Mo. 514; Spurlock v. Railroad, 93 Mo. 530, 537.]

IV.   A more difficult question is presented by the allowance by the court of the attorney fee of $1000 to Mr. Parks.   After the approval by the court of the report of the commissioners, Mr. Parks requested the court to allow him a reasonable fee as attorney for plaintiff, and thereupon he, along with other witnesses called by him, was sworn, and testified in substance as to the amount of work that had been done by him as such attorney in the course of the trial, and said that in his judgment the fee ought to be $1000, and that if the case had not been contested he would have said that it ought to be in the neighborhood of half that. amount; so that the question was then squarely pre-sented to the trial court as to whether or not both classes of fees should be allowed and taxed as costs, as provided in section 4422, Revised Statutes 1899, which, so far as it is applicable here, is as follows: "The judge of the court in which any suit under this article may be brought shall allow a reasonable fee to the attorney or attorneys bringing the suit,   .   .   . which fee   .   .   .   shall be taxed and paid as other costs in the case."

This suit was brought "under this article" by the filing of a simple petition for partition of the two tracts of land which have been called the "Wash Hancock Farm" and the "Dorman Farm." It soon, however, by the action of both parties, passed far beyond these simple limits.  An accounting was demanded by the plaintiff for rents and profits to be applied to the extinguishment of a vendor's lien, the holders of which were made parties, and she finally included in her petition a count in the nature of a bill in equity to have the defendant, who was seized in fee of the Wash Hancock farm, declared a naked trustee for the other parties to the suit.   The defendant also injected an issue by the charge that the interest of the plaintiff in all the lands involved had been extinguished by advancements.   At the trial the petition was amended by strik-

ing out the portion relating to the Wash Hancock farm, leaving the Dorman farm, which had been so persistently misdescribed by the plaintiff, the only subject-matter of the suit. The result was a variegated decree, which plainly transcends the ordinary limits of statutory partition. The record fully sustains the statement of Mr. Parks, that half his fees were earned in these contests between the parties. We are unable to glean from it a service performed by him in the interest of all the parties, or with respect to which the safety of defendants did not indicate the employment of counsel to look after their interest.

The allowance of the attorney fee requires no formal motion. The court itself is familiar with the service rendered and presumptively knows without evidence what would be a reasonable fee (Eddie v. Eddie, 138 Mo. 607), and it is not required to be made at the time of or before the judgment is rendered, or before the filing of a motion for a new trial. The fact that in this case it was included in the same entry as the final judgment in partition does not change its nature in any respect, so that we do not think that it is one of those matters which are required under our practice to be presented in the motion for a new trial. It is, however, such a matter as is required to be brought into the record by bill of exceptions. This record shows that the defendants' attorneys were in court when it was called for hearing, and, although actually notified of that fact, they chose not to take any part in the inquiry and took no exception to the order of allowance. It is true that they filed a motion to set aside the order and retax the fee, but this motion was not copied into the bill of exceptions, nor was there any direction to the clerk to do so. Under these circumstances we are of the opinion that the question of the propriety of this allowance is not before us for consideration.

For the reasons stated the judgment is affirmed. *Blair, C.,* concurs.

PER CURIAM.—The foregoing opinion of BROWN, C., is adopted as the opinion of the court. All the judges concur, except *Graves, J.,* not sitting.