BAGWELL, Respondent, v. AMERICAN SURETY
COMPANY OF NEW YORK, Appellant.

**St. Louis Court of Appeals, December 1, 1903.**

1. **Building Contract:** FORFEITURE: BOND: DELAY CAUSED
BY OWNER. In an action on a bond given by a building contractor
to secure the faithful performance of the work, in which it is
provided for a per diem forfeiture in case of delay beyond a
certain time in the completion of the work, slight negligence
on the part of the plaintiff which caused delay in the progress
of the work, will not affect the liability of the surety on the
bond, except to relieve such surety from the stipulated forfeit-
ure.

2. **Amendments:** APPELLATE PRACTICE. Where the trial court
refused to permit defendant to amend his answer setting up
another defense, and the referee in the case subsequently filed
his report showing that the evidence offered in support of such
defense was not sufficient to sustain it, the ruling of the trial court
will not be disturbed.

3. **Building Contracts:** ALTERATIONS: RELEASE OF SURETY
ON BOND: COMPUTATION OF ARCHITECTS. The surety on a
bond given by a building contractor for the faithful performance of the
work is released from liability if the contract is altered without
his knowledge or consent; and if the contract provides for com-
putation by the architects of the cost of changes and their order
for the same in the building, changes without such computation
and order will release the surety.

4. ———: ———: ———: SURETY UNCONDITIONALLY BOUND.
Where a building contract provides a limit of cost for alterations and
additions, which are to be made on the order and computation
of the architects, but the sureties on the bond given by the con-
tractor acknowledged themselves "to be bound *unconditionally*
for the faithful performance of such alterations and additions
within the limit of such costs," as provided, such sureties are
not relieved from liability on the bond by alterations within the
limit of the cost, although made without the order or computa-
tion of the architects.

Appeal from St. Louis City Circuit Court.—*Hon. H. D. Wood*, Judge.

AFFIRMED.

*W. B. & Ford W. Thompson* for appellant.

.(1)   Where the special contract pleaded as the foundation of plaintiff's right of recovery is one of suretyship, wherein plaintiff declares that he performed each and every of the conditions upon his part, he must show an exact and strict compliance with all of said conditions or terms, without departure therefrom, otherwise his proof fails and he can not recover of the security.   State ex rel. v. Tittman, 134 Mo. 162; Beers v. Wolf, 116 Mo. 179; Oberbeck v. Mayer, 59 Mo. App. 289; Evans v. Graden, 125 Mo. 72; Lumber Co. v. Gates, 89 Mo. App. 206; Eldridge v. Fuhr, 59 Mo. App. 44; Nofsinger v. Hartnett, 84 Mo. 549; Bauer v. Cabanne, 105 Mo. 118; Burnes' Estate v. Fidelity and Deposit Co., 70 S. W. 518; Feurth v. Anderson, 87 Mo. 354; Smith v. Haley, 41 Mo. App. 611; Eyerman v. Cemetery Ass'n, 61 Mo. 489; Davis v. Brown, 67 Mo. 313; Lewis v. Slack, 27 Mo. App. 119; Halpin v. Manny, 33 Mo. App. 388; Warson v. McElroy, 33 Mo. App. 553.   (2) The contract into which the surety has entered can not be varied or changed without his consent.   The referee finds in this case that the contract was changed in many respects, therefore the surety should be discharged. Morgan v. Martien, 32 Mo. 438; Schuster v. Weiss, 114 Mo. 158; Gugerty v. Vieths, 14 Mo. App. 577; Hemery v. Markberry, 57 Mo. 399; Beers v. Wolf, 116 Mo. 179; Evans v. Graden, 125 Mo. 72; Eldridge v. Fuhr, 59 Mo. App. 44; Killoren v. Meehan, 55 Mo. App. 427; Aschenbroedel Club v. Finlay, 53 Mo. App. 256; Lumber Co. v. Gates, 89 Mo. App. 201; Burnes Estate v. F. & D. Co., 70 S. W. 518; Bauer v. Cabanne, 105 Mo. 118; Nofsinger v. Hartnett, 84 Mo. 549.   (3)   An agreement between

the principal in the bond and the creditor, whereby the time of payment is extended and changed from that stated in the contract, will discharge the surety. Owings v. McKenzie, 133 Mo. 323; Brown v. Kirk, 20 Mo. App. 524; Russell v. Brown, 21 Mo. App. 51; Hartman v. Redman, 21 Mo. App. 124. (4) The fact of whether or not the surety is injured by reason of the changes that are thus made in the contract, is immaterial, and the surety is discharged. Beers v. Wolf, 116 Mo. 179; Lumber Co. v. Gates, 89 Mo. App. 201; Bauer v. Cabanne, 105 Mo. 118; Burley v. Hitt, 54 Mo. App. 272; Killoren v. Meehan, 55 Mo. App. 427; Burnes Estate v. Fidelity & D. Co., 70 S. W. 518. (5) While the allowance of amendments is a matter within the discretion of the court, the action of the lower court is not conclusive and is subject to review in the appellate court, and where it is apparent that the refusal of the court to allow the amendment may lead to the perpetration of an injustice under the form of law, and the granting of the amendment on terms could do no wrong to the adverse party, such amendment should be allowed, and this is specially true where, from the character of the original pleading and of the proposed amendment, it is apparent that defendant intended to raise by his first answer the issue which he tenders by the amendment. Turner v. Thomas, 10 Mo. App. 338. (6) Amendments are favored and should be liberally allowed in furtherance of justice. Carr v. Moss, 87 Mo. 447; Howell v. Stewart, 54 Mo. 408; Life Ins. Co. v. Smith, 117 Mo. 297. (7) The court erred in not permitting defendant to show, without amending his answer but simply under the general denial of his original answer, that the plaintiff failed to execute that part of the contract which required him to pay the contract at stated periods in current funds, and to show that he not only did not pay his as agreed, but entered into an agreement with the contractor for an entirely different time and form of payment, defendant being entitled to show under a general

denial any fact which tends to disprove an allegation necessary to the support of plaintiff's case. Mize v. Glenn, 38 Mo. App. 98; Northrup v. Ins. Co., 47 Mo. 435; Hoffman v. Parry, 23 Mo. App. 20; Sargent v. Railway, 114 Mo. 348.

*Virgil Rule* for respondent.

(1) The rule in Missouri is that alterations must be so material as to destroy the identity of the contract, or if a new contract is relied on such new contract must be valid and supported by a legal consideration to operate as a discharge of the surety. Brandt on Suretyship sec. 80; Bowman v. Globe Co., 80 Mo. App. 628; Trimmerberg v. Schramm, 71 Mo. App. 87; Kansas City v. McGovern, 78 Mo. App. 513; Beers v. Wolf, 116 Mo. 179. As to the method of payment see Fister v. Gaston, 123 Inf. 96. (2) If the finding of the referee is not correct, still, delays in payment will not release the surety where he is not in any way prejudiced thereby. Ramlose v. Dolman, 73 S. W. 917. (3) (a) Amendments are within the sound discretion of the trial court, and its actions thereon will not be disturbed unless it is manifest there has been an abuse of that discretion. State ex rel. v. Thompson, 81 Mo. App. 556, and cases cited. (b) Much more liberality should be extended with respect to amendments made before trial than those made during or after. Stewart v. Van Horne, 91 Mo. App. 658. (c) But under the referee's finding that the evidence offered did not prove or tend to prove the affirmative defense sought to be made by the amended petition, the court properly denied such amendment after trial.

GOODE, J.—The appellant, the American Surety Company, is surety for William Logan on a bond given by said Logan to William B. Bagwell, for the faithful performance of a contract between Logan and Bagwell, wherein the former agreed to build a house for the

latter.   This action was brought on the bond to recover damages for certain breaches of the building contract by Logan, which put Bagwell to an expense of nearly $600 above the contract price of the house.   The breaches were the failure of Logan to pay for materials and labor, discharge some liens for labor and material, and complete the house in the time stipulated.

In defense of the action appellant answered that Bagwell failed to perform his part of the building contract, to-wit: that he unduly postponed the selection of certain articles called for in the architects' specifications and which Bagwell had reserved the right to choose, thereby hindering the contractor's work and preventing the expeditious completion of the house; that Bagwell did not pay Logan the installments of the contract price on the dates they were stipulated to be paid, thus hindering Logan's work by leaving him without means to prosecute it; that the delay in payment grew out of an independent contract (to be stated later) entered into by Bagwell, Logan and J. E. Love, from whom Bagwell borrowed the money to defray the cost of the house; that alterations were made by Bagwell as the house progressed, in contravention of the contract.   Those alleged defaults are pleaded in discharge of the appellant as surety on Logan's bond on the ground that they happened without its knowledge and enlarged the obligation for which appellant bound itself as Logan's surety.

This case was partly tried in the circuit court, but after some evidence had been introduced, was referred to Hon. Daniel G. Taylor, as referee, before whom the taking of evidence, after many adjournments to accommodate the parties, was finished.   While the hearing was in progress before the referee, it was suspended at the request of the appellant in order that an amended answer might be filed in the cause by leave of the circuit court; and on the nineteenth day of December, 1902, application was made to the court for leave to file the answer.   The respondent objected for the reason that

the case had been pending for years, had been partly tried before the circuit court, then referred, the hearing was in progress before the referee on issues that had long been made up, and the referee was so far advanced with the cause that he expected to close it on December 23d, four days from the date of the motion for leave to amend.    The court sustained the objection and refused permission to file an amended answer; to which ruling the defendant excepted and filed a term bill of exceptions.

The amendment appellant desired to make was to insert in the answer a statement of the agreement alleged to have been made by Logan and Bagwell at the request of Love, in modification of the terms of payment to Logan provided in the original contract.    The proffered amendment states that after the execution of the building contract and the bond in suit, Bagwell and Logan made a new and additional agreement in regard to payments without the knowledge and consent of the surety company, whereby Logan agreed to give plaintiff and his agent Love five days' time to pay any installment after it fell due; that under the new agreement Love was not bound to make a payment unless the superintendents of the building drew an order on him and certified that Logan had paid for the materials and labor so used, and then was only bound to pay after five days; that those terms altered the contract for which appellant became surety.

One term of the building agreement between Bagwell and Logan provided that no alterations should be made in the work shown and described in the drawings and specifications, except on the written order of the architects and that when so made, the value of the work added or omitted should be computed by the architects and the amount added to or deducted from the contract price.    The architects who drew the plans and specifications and superintended the construction of the building were Matthews & Clarke.    There was a provision of

the contract that if the house was not completed by June 20, 1896, Logan should pay Bagwell three dollars a day thereafter until it was completed, as liquidated damages.

The referee found that Logan, instead of finishing the job, abandoned it after the walls were up and the roof on, but when considerable work remained undone; and that Bagwell and his architects finished it, as they had a right to do under the contract. He refused to allow the forfeiture of three dollars a day against Logan, because the delay was due, in a measure, to Bagwell's own neglect in selecting certain materials; and Bagwell, moreover, took possession of the house with Logan's permission, while it remained unfinished. In consideration of those circumstances the learned referee deemed it unjust to tax the surety on Logan's bond with the penalty for delay in finishing the work. As Bagwell submitted to that ruling, it is not before us for review.

The referee found that, on account of Logan's failure to carry out the contract, Bagwell had to pay about $560 more than the contract price to get the house finished, for which sum, with interest, he advised the circuit court to render judgment, and this was done. We have no cause to notice the items included in that total.

As to the release of the surety by Bagwell's failure to promptly select material and the consequent delay of the work of construction, we think that circumstance could have had no effect on the surety company's liability except the chance of burdening it with payment of the stipulated forfeiture; and as the judgment below relieved the company from the forfeiture, its contention on this point is devoid of merit. Slight negligence on Bagwell's part in choosing tiling and other material was not a breach going to the entire consideration of the contract and so annulling it and the bond with it; but one that gave Logan a claim for whatever loss he

sustained by the enforced delay and relieved him from blame for failure to finish in time, if the failure was due to respondent's neglect. Under the facts shown, it affected the surety's liablity only as to the stipulated forfeiture.    Smith v. Crews, 2 Mo. App. 269; O'Neil v. Webb, 78 Mo. App. 1; Springfield Seed Co. v. Walt, 94 Mo. App. 76.

It is earnestly contended that the surety was released by the side-agreement orally made between Logan and Bagwell, allowing five days grace for payment of each installment of the contract price. Those installments fell due as different stages were reached in the construction of the building; one was to be paid when the first-floor joists were in; another when the second-floor joists were in; another when the roof was on, and so on. The verbal arrangement attempted to be pleaded by way of amendment to the answer, that Love, who furnished the money, should have five days' notice before he had to pay an installment, and have, too, a certificate of the architects that material and labor bills had been paid, was an amendment of a vital character, offered several years after the issues were joined and in the midst of the referee's hearing. But we are not called on to decide whether the circuit court abused its discretion in refusing to allow it. That question is of minor importance in view of the finding by the referee that no positive arrangement of that kind was made; that the matter was discussed in a general way by Love, Bagwell and Logan, but did not crystallize into a contract, and, moreover, that there was no consideration for such an agreement. The referee's opinion on the subject we accept, as well as his finding of the facts:

"The evidence on this subject simply tended to show an oral request for an accommodation in the times of payment different from those required by the building contract, made by Love, Bagwell's agent, upon Logan and promised by Logan. This request and promise can hardly be termed an agreement, as the evidence pro-

duced and offered shows it to have been made without any consideration whatever and without having been reduced to writing. It can not be contended that this understanding rises to the dignity of a contract, because it was subsequently lived up to, for such is not the fact. On the contrary the evidence shows that some of the payments were made in exact accordance with the original building contract, and that, in the only instances where there was a failure to make payments in accordance with the contract, such failure resulted from facts at wide variance with the agreement or understanding between Logan and Love.''

The remaining inquiry is as to whether the alterations in the building while it was under construction, released the surety on the bond. The referee found that eight changes from the original plans and specifications for the house were made by order of Bagwell during construction, without the knowledge of the surety company and without written orders from the architects and computation of the cost by them. He found further that the entire cost of the changes did not exceed $200. If we are to look only to the building contract in deciding this point, the surety company must be held to have been discharged. As we have said, that contract provided that no alterations should be made except on a written order from the architects, and that when made, the value of the work added to or omitted, should be computed by the architects and added to or deducted from the contract price. This course was not pursued and if the bond contained no more than an obligation for faithful performance of the contract by Logan, the surety was released when the principal parties to the contract altered it without the knowledge or consent of the surety; and so the referee found, citing Beers v. Wolf, 116 Mo. 179; Killoren v. Meehan, 55 Mo. App. 427; Eldridge v. Fehr, 59 Mo. App. 44. Those cases decide that if a building contract is materially altered without consulting the surety on the contractor's bond, the surety

is discharged, and hold further, that when the contract contains a provision for computation by the architects of the cost of the changes, this must be done before the changes can be lawfully made. These rules were applied for the surety's benefit in Beers v. Wolf, though the cost of the deviations from the contract dealt with in that case exceeded but little the cost of the changes ordered by Bagwell.

But the bond we have to construe is anomalous and appears to bear out the contention of the respondent and the finding of the referee and the court·below, that the changes made by Bagwell had no effect on the surety's obligation, as their cost fell below two hundred dollars. The parties to the contract, Bagwell and Logan, were both parties to the bond, with power to adopt what terms they pleased in deviation from those of the contract. The condition of the bond, in so far as it applies to the question under advisement, reads as follows:

"The condition of the above obligation is such, that whereas, the said William Logan, has on the day of the date of these presents, executed and entered into a certain contract for the erection of a certain building in said contract described, which contract is hereto annexed. Now, if the said Wm. Logan shall well and truly perform and fulfill all and every the covenants, conditions, stipulations and agreements in said contract mentioned to be performed and fulfilled, and any alterations and additions to said contract, provided such alterations and additions, if any such be made, shall not exceed in extra costs the sum of two hundred dollars.

"We, the said sureties, hereby expressly waiving all rights to be notified of, or by any further act to give our assent to, such alterations and additions and acknowledging ourselves to be bound unconditionally for the faithful performance of such alterations and additions within limit of such costs aforesaid."

It will be noticed that the above clause provides for alterations from the original plans not to entail a

cost of more than $200. But the appellant contends the true construction of the clause is that in any event alterations should be made in conformity to the regulations of the contract; that is, upon written orders from the architects and a computation of the cost; that when made in that manner they could not entail an additional expense of more than two hundred dollars. We would adopt this interpretation but for the language of the bond, whereby the surety company acknowledges itself to be bound *unconditionally* for the faithful performance of such alterations and additions within the specified limit. We are inclined to the view which prevailed below; that the true meaning of the bond was to permit alterations to the amount of two hundred dollars to be made in any mode the parties thought proper, regardless of the contract mode, without affecting the surety's liability. The condition of the bond binds the company not only for the performance of all the covenants, conditions, stipulations and agreements in the contract to be performed by Logan, but contains a superadded clause which was wholly superfluous unless it was intended to increase or diminish the surety's liability from what it would be if fixed by the terms of the contract. There can be no dispute that the intention of the bond was to do the one thing or the other; either enlarge or curtail the terms of the contract in respect to the right to alter the plans and specifications as the work progressed. Which was it? The words by which the surety company acknowledged itself "to be bound unconditionally for the faithful performance of such alterations and additions within the limits of such costs aforesaid," appear to exclude the notion that the company was only bound on condition of the contract's regulations being followed, and to dispense with those regulations as to changes not increasing the cost of the building above two hundred dollars.

Judgment affirmed. *Bland, P. J.,* concurs; *Reyburn, J.,* having been of counsel, not sitting.