HAX-SMITH FURNITURE COMPANY, Respondent,
v. ALFRED TOLL et al., Appellants.

Kansas City Court of Appeals, October 5, 1908.

1. **BUILDING CONTRACT: Specifications: Bond: Construction.**
Specifications to a building contract provided that the price
of changes required by the owner must be agreed upon before
the changes were put into execution. The bond provided that
the owner and the contractor might make additions, etc., with-
out notice to the surety. The materials found in the cellar
required heavier foundations than the contract called for and
the street line would not permit a right-angled parallelogram
as the contract provided. The contractor and owner agreed
that the foundation should be made heavier and that the build-
ing should be a rhomboid instead of a parallelogram. *Held*,
that the price of such changes did not have to be fixed by
agreement in writing before they were made and that the
stipulation in the specifications did not refer to that kind of
changes but to such changes as the owner might compel the
contractor to make; and that the surety was not released.

2. ————: **Bond: Fraud: Appellate Practice.** Where the trial
court sitting as the trier of facts makes a finding supported by
the evidence, the appellate court will not weigh the evidence
and that disposes of the question of fraud in this case.

3. ————: ————: **Construction: Instruction.** A contract was
executed on the twenty-eighth of December and the bond on
the thirtieth. An instruction declared that a stipulation in the
bond modified an inconsistent stipulation in the contract. *Held*,
sound law, but unnecessary to a proper disposition of the
case.

Appeal from Buchanan Circuit Court.—*Hon. Chesley
A. Mosman,* Judge.

AFFIRMED.

*Culver & Phillips* and *Botsford, Deatherage, Young
& Creason* for appellants.

(1)    The court erred in giving the peremptory in-
struction against defendant Toll and in refusing his de-
murrer.    The changes in the contract discharged Toll

as surety, and entitled him to judgment. Chapman v. Emberg, 95 Mo. App. 127; Lumber Co. v. Gates, 89 Mo. App. 201; Eldridge v. Fuhr, 59 Mo. App. 44; Killoven v. Meehan, 55 Mo. App. 427; Burnes Estate v. Fidelity Dep. Co., 96 Mo. App. 467. (2) Plaintiff's eighth instruction was erroneous. The contract and bond should be read together as one instrument, and effect given to the contract provision requiring changes of the contract to be in writing. 17 Am. Eng. Enc. of Law (2 Ed.), pp. 8, 10; McDonald v. Wolff, 40 Mo. App. 309; Knowles v. Toone, 96 N. Y. 534; 100 Mo. App. 365; 97 Mo. App. 258; 100 Mo. App. 130; 111 Mo. App. 445; Ireland v. Montgomery, 34 Ind. 174; Brandreth v. Stanford, 1 Duer (N. Y.) 390; Thompson v. McClenachan, 17 S. & R. (Pa.) 110; Lewis v. Insurance Co., 3 Mo. App. 372; Decorah v. Kesselmeier, 45 Iowa 166; Johnson County v. Wood, 84 Mo. 489; Belch v. Miller, 32 Mo. App. 387. (3) There is no evidence in this case that the provision in the contract requiring changes to be in writing, was waived by the joint action or contract of the owner and contractor. The bond provision that changes might be made without notice to the surety, did not do away with or waive the contract provision that changes must be made in writing by the owner and contractor. Ahern v. Boice, 19 Mo. App. 553. (4) The fraudulent representations as to the Massard bid was grossly violative of defendant's rights, and either discharges them from all liability or worked a diminution of the demand sued on in the amount of the difference of $2,000 between his bid as made and his bid as falsely represented. Bank v. Byers, 139 Mo. 627.

*Vinton Pike* for respondent.

(1) There is no deceit unless the representation is known to be false by the party making it. The law is plainly enough with the plaintiff. Estes v. Alexan-

der, 90 Mo. 453; Hunt v. Blanton, 89 Ind. 47; Dillman v. Nodlehoffer, 119 Ill. 575; Hecker v. Stevens, 121 Ill. 186; Grier v. Puterbaugh, 108 Ill. 607; Wilson v. Strayton, 26 Ark. 28; Hall v. Johnson, 41 Mich. 286; Endsley v. Johns, 120 Ill. 477; Farrar v. Churchill, 135 U. S. 609; Morse v. Rathburn, 49 Mo. 91.    (2)    The court tried all the issues without the aid of a jury.    The record in this respect is like that of German, etc., v. Wehr, 47 Md. 190.    The declarations of law given indicate that the judge found the facts as predicated therein, and those refused indicate that he did not find the facts as stated in them.    The twelfth declaration is the court's conclusion upon the whole case and signifies nothing more than the judgment rendered.    Hess v. Clark, 11 Mo. App. 492; Beck v. Pollard, 55 Mo. 26, 28; Cooper v. Ord, 60 Mo. 431; Perkins v. School Dist., 61 Mo. App. 514; Carpet Co. v. Hatton, 55 Mo. App. 322; Williamson v. Drew, 9 Mo. App. 598; Gage v. Averill, 57 Mo. App. 118; Price v. Merritt, 55 Mo. App. 644; Millan & Abbott v. Porter, 31 Mo. App. 563.

JOHNSON, J.—Action on a bond executed by defendants Sproul, as principal, and Toll, as surety, to secure the faithful performance by the former of a contract made by him with plaintiff for the erection of a business building on premises owned by plaintiff in St. Joseph. A jury was waived by the parties. The trial resulted in a judgment for plaintiff and both defendants appealed. The bond executed December 30, 1905, was in the penal sum of $25,000, and expressed the following obligation: "The condition of the above obligation is such that whereas the said contractor (defendant Sproul) has entered into a contract with the said owner (plaintiff) to do certain work and furnish certain materials for the said owner: Now, therefore, if the said contractor shall well and truly perform said work and shall furnish all material in accordance with

drawings, specifications and contract . . . and shall protect defendant and hold harmless the said owner against any and all liens or claims of any kind that may be filed by laborers, mechanics or materialmen, within the time specified by law after the date of the completion of this contract, then this obligation shall be void; otherwise to remain in full force and effect." The parties stipulated in the instrument that "the said owner and the said contractor may from time to time make additions to, omissions from and modifications in said contract without notice or consulting the sureties and without prejudice to or invalidating this bond."

It is alleged in the petition and the proof shows that defendants failed to protect the property against mechanics' liens and that plaintiff was compelled to pay the demands of a number of lien claimants in order to prevent its property from being sold under executions. The court, after deducting the credits and offsets found the aggregate amount of plaintiff's loss on account of such outlays to be $3,417, and assessed plaintiff's damages at that sum in the judgment entered.

Defendant Toll presents the special defense, duly pleaded in his answer, "that without the knowledge or consent of the surety, certain changes in the contract were made by the owner and contractor which provided for additional work and materials the price of which was not agreed to in writing before said work was begun or said materials were furnished." This defense is founded on the specifications (by reference made part of the contract between the owner and contractor) which provided "should the owner at any time during the progress of the work request any alterations, deviations, additions or omissions from the contract, he shall be at liberty to do so and the same shall in no way affect or make void this contract or bond, but will be added to or deducted from the amount of the contract as the case may be, by a fair and reasonable valuation. The

price to be agreed upon in writing before being put into execution, and if any dispute shall arise regarding the valuation, the same shall be decided by arbitration."

To escape liability on the bond, the surety relies here on two changes in the plans and specifications which were made on oral agreement of the owner and contractor, after the execution of the contract and bond and without notice to the surety. First, the trenches for the footings of the foundations and walls and the concrete footings were made deeper and wider than specified, resulting in extra expense of $593, which the owner paid the contractor, and, second, the form of the building was altered slightly. The plans and specifications describe a building four stories high, 263 feet long, 120 feet wide, and in the form of a right-angled parallelogram. When the work was begun, it was found that the street on which the building would front slightly varied from a true course, and if built as designed, one of the front corners of the building would be on the street line and the other four or five feet therefrom. It was on the suggestion of the contractor, reluctantly adopted by the owner, that the form of the building was changed to that of a rhomboid, in order that the front wall might be parallel with the street. If we were sitting as a trier of fact, we would find from the evidence that the contractor offered to make the alteration without extra charge, but since the trial court found otherwise by allowing the contractor a credit of $254.41, as the extra cost to him of the alteration and the finding is supported by substantial evidence we shall treat it as we would the verdict of a jury. The deepening and widening of the foundation was made necessary by the nature of the soil encountered in the excavation of the trenches. This necessity was recognized by the owner, architect and contractor, and the change

was agreed to as a matter of course and the owner agreed to compensate the contractor for making it.

Shortly after the work was begun, the contractor, prompted by his subcontractor, requested that the owner put in writing the agreement to pay for the extra work, whereupon plaintiff wrote a letter addressed to the architect in which he agreed to pay $6 per yard for the extra concrete and twenty-five cents per yard for the extra grading. Counsel for defendant Toll argue that since the provision of the contract to which we have referred required the price "to be agreed upon in writing before being put into execution" this letter, written while the work was in progress, was not a compliance with that requirement under the strict rules of construction which obtain in favor of a surety. We shall concede only for the purposes of argument the soundness of this position and, dismissing this letter from consideration, shall treat the feature of the case now before us from the standpoint that with respect to the alterations of the plans and specifications, the price of the extra work in neither instance was agreed on in writing.

This omission should not be held to have released the surety from the obligation of the bond for the reason that under no reasonable construction of the contract between the owner and surety may it be said that the alterations in question belonged to the class which the contract contemplated should be made only on a written contract between the owner and contractor fixing the price of the extra work. Should we concede that the stipulation in the specifications is inconsistent with that in the bond and that they should be construed together as parts of one contract, it would avail defendants nothing. Clearly, the intention expressed in the provision in the specifications was to provide a method by which the owner might compel the contractor to make such changes in the plans and specifica-

tions as he might desire during the progress of the building and had no purpose of restricting the freedom of the owner and contractor to make changes in the plans and specifications by voluntary agreement. The language "should the owner at any time during the progress of the work request any alterations   .   .   . he shall be at liberty to do so," cannot well be reconciled to any other interpretation, and the idea that the subject of the provision was possible compulsory changes is borne out by the final clause which provides for submitting the question of price to arbitration in instances where the parties might be unable to come to an agreement respecting it.    The changes under consideration in no sense were compulsory, but were made by the owner and contractor voluntarily.    They did not fall within the class designated in the specifications and were not controlled by its provisions.    [Bagwell v. Surety Co., 102 Mo. App. 707.]    They did belong to a class included in the stipulation in the bond.    That stipulation covered not only changes compelled by the owner, but also those which might be agreed on by the owner and contractor.    It did not place any restrictions on the right of the parties to make such changes, nor prescribe any method by which they were to be made.    Within the legitimate scope of the proposed improvement, the parties were accorded complete freedom to contract as they pleased and the utmost effect that could be given the provision in the specifications (on the theory that it should be read into the bond) is that the method it prescribed applied solely to alterations compelled by the owner and not to those made by voluntary agreement.    To the extent, at least, that the bond enlarged the right of the parties to make alterations over that provided in the contract between the owner and contractor, its terms must control and in that field are exclusive of the contract and conclusive of the scope of the right and the methods by which

it may be exercised.   [Bagwell v. Surety Co., supra.]

The surety will not be released on the ground that the alterations were made in an unauthorized manner.

Both defendants tender in their answers, and argue here, a defense based on alleged false and fraudulent representations made by plaintiff to defendant contractor by which he was induced to reduce materially his bid below what it would have been had he not been deceived by the representations.   The declarations of law given show quite clearly that the court found the facts against defendants on this issue, and we do not see how a different conclusion could have been drawn from the evidence.   It is enough that we find in the record substantial evidence supporting the finding. We shall not weigh the evidence nor do we deem it necessary to discuss its details pro and con.

Complaint is made of the following declaration of law given at the instance of plaintiff:   "The contract between plaintiff and Sproul was executed on the 28th day of December, 1905, before the bond in suit which was executed on the 30th day of said December. As between plaintiff and Toll, their stipulation written in said bond modified, with the consent of Sproul, the stipulation in the building contract as far as any inconsistency may exist between them and the stipulation in the bond controls so far as defendant Toll is concerned."   The proposition of law thus declared is sound but, as we have indicated, its employment was not necessary to a proper disposition of the case, since, on the hypothesis that bond and contract are consistent we have found that the surety should not be released.

The judgment is affirmed.   All concur.