STATE EX REL. CONCRETE & STEEL CONSTRUCTION CO., RESPONDENT, v. SOUTHERN SURETY CO., APPELLANT.*

In the Springfield Court of Appeals. January 7, 1927.

68

70

*Corpus Juris-Cyc. References: Appeal and Error, 3CJ, p. 913, n. 97; p. 1362, n. 71; 4CJ, p. 271, n. 27 New; p. 275, n. 49; p. 277, n. 60; p. 969, n. 56; p. 1000, n. 23; Contracts, 13CJ, p. 747, n. 44; Courts, 15CJ, p. 920, n. 8; p. 922, n. 9 New; Highways, 29CJ, p. 583, n. 55; p. 612, n. 59 New; p. 613, n. 81, 82, 83, 85; Pleading, 31Cyc, p. 65, n. 43; p. 82, n. 11; p. 738, p. 3; p. 775, n. 68; Principal and Surety, 32Cyc, p. 307, n. 92.

*Owen & Davis* for appellant.

*Robertson & Baird,* for respondent.

BAILEY, J.—This is an action growing out of a certain subcontract for removing a bridge on the State Highway near Houston, in Texas county. The suit is on the bond of the contractor and prosecuted in the name of the State of Missouri, for the use of the Concrete & Steel Construction Company and against W. I. Davis et al., doing business as the Davis Construction Company, and the Southern Surety Company. The cause was dismissed as to all defendants except the Southern Surety Company for lack of service and was tried during the November term, 1925, of the circuit court of Jasper county, at Carthage.

On the date the case was set for trial, defendant filed an application for continuance which was overruled. Thereupon the case was tried without a jury. After the evidence was all in, the cause was, by stipulation, transferred to the January term, 1926, of the Jasper county circuit court, at Joplin, for argument and decision. On January 23, 1926, during said January term, the court rendered judgment in favor of plaintiff in the sum of $1200 and defendant thereupon perfected its appeal to this court.

No term bill of exceptions was procured nor leave obtained to file such bill during the November term, 1925, when the case was tried. Respondent raises the point that appellant's failure to obtain a term bill of exceptions precludes it as to any exceptions taken during the term at which the cause was tried. The stipulation for transfer to a subsequent term kept the case in the breast of the court. This situation, in our opinion, is no different from those cases in which the motion for new trial is continued to a subsequent term in which event, it has uniformly been held, the continuance of the motion carries with it such matters of exception as fall within the purview of a motion for new trial. [Riddlesbarger v. McDaniel, 38 Mo. 138; Blanchard v. Dorman, 236 Mo. 416, 438, 139 S. W. 395; Brewing Co. v. Ehlhardt, 139 Mo. App. 129, 120 S. W. 1193; Henze v. R. R. Co., 71 Mo. 636.]

Until there was a judgment neither party could know whether he would be called upon to take steps for preserving his exceptions. This does not mean that the necessity of a term bill of exceptions has been dispensed with as to all matters. In construing section 1460, Revised Statutes 1919, the rule seems to be that exceptions taken to rulings prior or preliminary to the trial itself must be preserved by a term bill of exceptions.

But exceptions taken during the progress of the trial or hearing may be preserved by a general bill of exceptions allowed at a subsequent term when the judgment may have been rendered and the motion for new trial overruled or sustained. [Kline Cloak & Suit Co. v. Morris et al., 293 Mo. 478, 240 S. W. 96; Sweeney v. Sweeney, 283 S. W. 736; Asphalt Co. v. Ulman, 137 Mo. 564, 38 S. W. 458; Reinman v. Larkin, 222 Mo. 165-166, 121 S. W. 307; Stevens v. Automatic Co., 270 S. W. 414; Jones v. Evans, 80 Mo. 565.]

We are not unmindful of the ruling of the Supreme Court (en Banc) in State ex rel. Lamport v. Robinson, 257 Mo. 584, 165 S. W. 997, upon which counsel principally rely to support the point made upon the bill of exceptions. That cause was in mandamus to compel a division of the Jackson County Circuit Court to return a case to the general docket.

The Supreme Court held the remedy was by appeal and not mandamus. After so holding, the court considered relator's contention

that no appeal would lie because the case sought to be returned to the general docket was commenced at one term and after the adjournment of court in course, completed at the next term before the same jury and held that there was nothing to prevent relator from obtaining a term bill of exceptions as to all exceptions saved during the first term and thereafter incorporating it into a final bill obtained at the succeeding term after judgment was rendered. The record shows exceptions were saved, but as to whether leave to file a term bill at the first term was obtained does not appear. The real question before the court was whether or not redress by appeal could be had where a cause was commenced during one term and completed at the succeeding term before the same jury. The specific question as to just what exceptions must be saved by a term bill of exceptions when a trial is begun in one term but continued into the following term, was not decided, although the language used might be construed as embracing all exceptions. The opinion in the Lamport case was *en Banc* and therefore, would not be supplanted by a Divisional opinion though subsequent thereto. [State ex rel. United Rys. Co. v. Reynolds et al., 278 Mo. 554, 213 S. W. 782.] The case of Kline Cloak & Suit Co. v. Morris, supra, was a divisional opinion rendered subsequent to the Lamport case and the holding therein, on which our ruling herein is based, would not, if in conflict, overturn the opinion in the Lamport case. In the Kline case the particular question here involved was before the court and the statutes were construed with reference thereto. We, therefore, feel justified in adhering to the specific ruling announced in the divisional opinion rather than in following the more general language used in the Lamport case.

It follows that defendant's bill of exceptions allowed at the January term, 1926, is proper, except in one particular. Defendant filed an application for continuance at the November term, 1925. This application was overruled and the action of the trial court thereon is assigned as error. This was preliminary to the trial and since no term bill of exceptions was obtained that matter is not before us for review under the authorities heretofore cited.

Appellant has failed to state separately errors alleged to have been committed by the trial court as required by our rule 18. While this rule has not been strictly enforced it should be observed if counsel desire all errors assigned passed upon. Under points and authorities numerous errors are assigned by defendant which we shall consider as a reasonable compliance with our rules. It is urged that plaintiff's petition fails to state a cause of action. The petition is short and we shall set out in full that portion relevant to the points raised. After stating plaintiff's corporate capacity and that of defendant surety company, the petition proceeds as follows:

"Plaintiff further alleges that on or about December 28, 1922, the Missouri State Highway Commission entered into a contract with the said Davis Construction Company for the performance of work and labor and the furnishing of material and supplies in and upon a certain highway in Texas County, Missouri, known as and called 'Project 90-C;' that pursuant to said contract and the laws of Missouri relative thereto the said Southern Surety Company made, executed and delivered to said Highway Commission, as it was bound to do, its bond wherein and by the terms of which the said Surety Company agreed and bound itself to pay for all material and supplies furnished and labor performed in or upon or about the construction of said highway under said contract; that the said Concrete & Steel Construction Company, at the special instance and request of the said Davis Construction Company, performed labor in, upon and about said highway included in said contract, at and near Big Piney River, said Texas county, for the said Davis Construction Company, of the reasonable value and worth of $1200 for which it agreed to pay said Concrete and Steel Construction Company said sum, but that it has failed and refused to pay the same to said Concrete & Steel Construction Company or any part thereof, though repeated demands have been made therefor.

"Wherefore, etc.,"

It is first charged that since the name of the obligee of the bond is not stated nor any fact stated showing a right in the State to prosecute this suit for the use of plaintiff, no cause of action is alleged. In support of this proposition we are cited the following Missouri cases: Sells v. Railroad Co., 266 Mo. 155, 181 S. W. 106; State ex rel. v. Hubbard, 203 S. W. 250, 199 Mo. App. 137; Betz v. Ry. Co., 284 S. W. 455. Those cases simply hold that in statutory actions the party suing must bring himself strictly within the statutory requirements, but in none of them was the suit brought in the name of the State for the use of another, as here. It will be observed that while the petition in this case is brought in the name of the State of Missouri the petition does not state that the bond was to the State. It does allege, however, that pursuant to "the laws of Missouri relative thereto" the defendant "made, executed and delivered to said Highway Commission its bond by the terms of which it agreed to pay for "all material and supplies furnished and labor performed in or upon" the construction of the highway.

At the time this contract was let, in December, 1922, there was in existence three separate and distinct laws applicable to bonds of this character. Section 10898, Revised Statutes 1919, was in effect until December 31, 1922. [See Laws of Missouri 1st, Extra Session 1921, p. 133, sec. 2.] Section 1040, Revised Statutes 1919, was in effect and has never been repealed in any respect unless by implica-

tion; there was also in effect section 25, p. 143, Laws of Missouri, 1921, 1st Extra Session. Section 10898 (supra) does not designate to whom the bond shall be given but does provide that it shall be conditional on the "payment for all material and labor furnished and performed" on the contract. Section 1040 (supra) provides that the bond shall be taken in the name of the State of Missouri, (or other civil subdivision there named) and shall be conditioned "for the payment of material used in such work and for all labor performed in such work." Section 25 (supra) simply provides that the bond shall be taken in the name of the State and made "to insure the proper and prompt completion of said work, etc." We must consider the language of the petition with reference to these several laws, keeping in mind the rule that when the sufficiency of a petition is first attacked by a demurrer *ore tenus,* as here, the pleadings are to be liberally construed. [Wilborn v. Lead Company, 268 S. W. 655.] It is quite clear those allegations of the petition which set forth the obligations of the bond substantially meet the requirements of both section 1040 and section 10898 (supra) but do not apply to section 25 of the 1921 Act.

The petition further alleges, however, that the bond was "made, executed and delivered to said Highway Commission," referring, unquestionably, to "the Missouri State Highway Commission" mentioned in the preceeding part of the same paragraph and hereinafter referred to as the commission. That being true, the bond was not made to the State of Missouri as provided in section 1040 and the State was not a proper party to the suit. The commission is a legal entity having the right to sue and liable to be sued as such and the State of Missouri cannot be inserted as a party in its place unless authorized by law. [Section 12, p. 136, Laws 1921.] The action should have been brought in the name of the Missouri State Highway Commission, to the use of relator; therefore, if a demurrer had been filed, it would necessarily have had to have been sustained. [State ex rel. v. Dodson, 63 Mo. 451; Missouri State Highway Com. ex rel. v. Coopers, 268 S. W. 701.] But plaintiff contends this was merely a defect of parties plaintiff patent on the face of the petition and was waived by defendant's failure to raise the question by demurrer. We believe that position is sound. [Mechanic's Bank v. Gilpin, 105, Mo. 17, 16 S. W. 524; State ex rel. v. Guaranty Co., 236 Mo. 352, 139 S. W. 163; Pickel Stone Co. v. Surety Co., 177 Mo. App. 494, 160 S. W. 833.] It is true, as urged by defendant, that there is a well-defined distinction between want of legal capacity to sue and failure to state a cause of action as clearly shown in the case of Gruender v. Frank, 267 Mo. 1. c. 719. However, the question in this case relates rather to a defect of parties plaintiff than want of legal capacity to sue or failure to state a cause of action. In the case of Mechanic's

Bank to use of Davis v. Gilpin (supra) it was conceded that no cause of action was stated as to the plaintiff bank and that the suit should have been in the name of Davis. It was urged that this point was waived by failure to demurrer. The Supreme Court held that: ''The defect of parties plaintiff in this case clearly appears upon the face of the petition, and it could have been reached by demurrer— Each litigant must unmask his batteries. We think appellant waived this defect by not demurring, when he could have demurred. It was not a defect affecting the merits of the case in the least degree, and it can be cured by amendment in this court.'' A petition of this character has been held subject to amendment under our statutes simply by striking out the name of the nominal plaintiff and leaving the name of the real party in interest. [Pickle Stone Co. v. Surety Co., supra.]

The point in question in this case is highly technical and does not effect the merits of the controversy. It would be a useless thing to remand a case for such a cause. But regardless of that, we are satisfied the defect was apparent on the face of the petition and should have been taken advantage of by demurrer as provided by section 1226, Revised Statutes 1919.

Defendant makes the point that section 25 page 143, Acts 1921, repeals section 1040, Revised Statutes 1919, by implication, in so far as state highways are concerned. A comparison of those sections reveal no such inconsistencies as would necessitate such a holding.

It is next urged that the petition fails to state a cause of action because there is no showing the bond sued on was executed and delivered contemporaneously with the contract for the performance of the work and that no independent valuable consideration is pleaded for the execution of the bond. This position is untenable. The petition alleges this bond was required by law as well as by the contract between the Missouri State Highway Commission and the Davis Construction Company. The law does not permit the commission to enter into such a contract without a bond, of which fact defendants are chargeable with notice. [State ex rel. v. Mfg. Co., 149 Mo. l. c. 212, 50 S. W. 321.] In other words the execution of the bond was provided for both by law and contract and was necessarily contemplated by the parties at the time the road contract was made. It follows that, even though the bond were executed afterwards, it is supported by the consideration of the original contract. [Oberbeck v. Mayer et al., 59 Mo. App. 289; County of Montgomery v. Auchley, 92 Mo. 126, 4 S. W. 425; Metz v. Warrick, 269 S. W. 626.] No pretense is made that there was no consideration for the bond and we believe the petition good after verdict in so far as this question of consideration is concerned.

It is next urged that the petition must fail because it fails to plead any fact showing the amount of penalty of the bond. While the petition does fail to state the amount of the bond, we are of the opinion this contention is without real merit for the reason this is a statutory bond. Section 1040 provides that the bond shall be conditioned upon the payment of "all *labor performed in such work.*" Similar provisions are in the other sections of the law heretofore referred to, of which defendant may be assumed to have been cognizant. The petition, in effect, alleges the bond was executed and delivered pursuant to the laws of the State and by implication in an amount sufficient to cover plaintiff's claim as included in the contract.

The petition is further assailed on the theory that it fails to state any facts showing the conditions of the bond or breach thereof. This attack is more particularly directed to that portion of the petition which states that the Surety Company by the terms of the bond "agreed and bound itself to pay for all material and supplies furnished and labor performed in or upon or about the construction of said highway under said contract." It is urged this is not a statement of an issuable fact but a conclusion of law and that therefore, no condition of the bond is stated. A long list of cases are cited in support of this proposition none of which do we consider in point. It has been a rule of the common law in this State from the very earliest decision that a written instrument should be pleaded according to its legal meaning and effect, which rule has not been changed by our code. [Jones v. Lauderman, 39 Mo. 288; Pye v. Rutter, 7 Mo., 548; Reilly v. Cullen, 159 Mo. 322, 329, 60 S. W. 126; Wilson v. R. R. Co., 190 S. W. 22.] Defendant in its reply brief practically concedes that the Cullen and Wilson cases are against their theory, but state the Supreme Court in the Cullen case overlooked all the earlier cases on the question. We do not agree with that contention but, be that as it may, this court is, of course, bound by the law as declared by the last controlling decision of our Supreme Court. We are of the opinion the petition sufficiently alleges the conditions of the bond.

The allegations that the work and labor was performed and material furnished, which the principal in the bond (The Davis Constrution Company) failed and refused to pay, sufficiently alleges a breach of the conditions of the bond, within the meaning of section 1030, Revised Statutes 1919. [Bricker v. Stone, 47 Mo. App. 530.]

All the attacks made upon the petition are technical. No injury has been done defendant on account of its alleged uncertainties and imperfections. When a defendant lies in wait, as it were, and first pounces upon a petition by a demurrer *ore tenus,* the petition will be upheld if by liberal construction it may be held to state a cause of action. [Wilborn v. Lead Company, 268 S. W. 655.] While the

petition in this case would unquestionably have been vulnerable to attack by a timely motion to make more definite and certain or on demurrer, we believe it will support the judgment.

Error is assigned in the refusal of defendant's instruction in the nature of a demurrer to the evidence because (1) the petition fails to state a cause of action as to the State to the use of relator and (2) because relator seeks to recover the reasonable value of the work performed but the evidence fails to show the reasonable value thereof. We have disposed of the first proposition and shall now consider the second. In the first place, as we read the petition, it declares on a special contract between the plaintiff and the Davis Construction Company whereby the latter agreed to pay the sum of $1200 for doing certain work. While the petition also states the work was of the reasonable value of $1200, that did not mean, necessarily, that the suit was on a *quantum meruit*. The question then is whether plaintiff proved the special contract pleaded. The contract is evidenced by certain correspondence, proposals and counter-proposals, which finally terminated in the writing of a letter offered in evidence as "Exhibit G" which is as follows:

"April 19, 1924.

"Davis Construction Company,
"Mammoth Springs, Arkansas.
"Gentlemen:

"We have your acceptance of our proposal to remove the bridge across Big Piney River, Project 90-C, Texas County, Missouri. To our proposal you have added the following: 'This agreement accepted the understanding that it does not in any way change the contract with the Davis Construction Company and the Vincennes Bridge Company.'

"We cannot go ahead with the work of removing this bridge with this condition in the contract as we do not know anything regarding your contract with the Vincennes Bridge Company.

"We are enclosing another proposition for the work which is identical with the one which you accepted and we ask that you sign same and return one copy to us.

"Our work in Texas County will be finished next week and we have advised our foreman, Mr. Wiggins, to ship all tools and equipment to Joplin, as soon as he finishes, unless he has further instructions from us.

"We would like very much to remove this bridge for you and hope you will see fit to accept our proposal.

"Very truly yours,

"CONCRETE & STEEL CONSTRUCTION Co.
"Contracting Engineer."

The proposition then proposed, known as "Exhibit H," is as follows:

"Joplin, Missouri.
"April 19, 1924.

"Davis Construction Company,
"Mammoth Springs, Arkansas.
"Gentlemen:

"As per our letter of March 11, 1924, we propose to furnish all the equipment and labor necessary for the removal of the old bridge across Big Piney River on the Cabool-Houston State Board for the lump sum price of twelve hundred dollars ($1200).

"The bridge consist of three steel spans, two concrete abutments and two concrete piers.

"Kindly return copy of this proposal to us for our files in case you desire us to do this work.

"Very truly yours,
"CONCRETE & STEEL CONSTRUCTION CO.
"H. W. KEADY, Contracting Engineer.

"Accepted:
"Davis Construction Company,
"By W. I. Davis, this 26th day of April, 1924.

"This agreement accepted with the understanding that we will pay the account above mentioned when work is done, but it is understood that the amount will be deducted from the Vincennes Bridge Company as per our contract with them.

"DAVIS CONSTRUCTION CO."

Accompanying their acceptance of this proposal, the Davis Construction Company wrote the following letter:

"April 27th, 1924.

"Concrete & Steel Construction Co.,
"Joplin, Missouri.
"Gentlemen:

"Your letter of April 19th. Would be very glad to fix the agreement for taking down the old bridge to please you, but we have been advised by our attorney that we cannot make an agreement for you to do something, which has been covered by a contract with the Vincennes Bridge Co., unless we put notice of our contract with the Vincennes Bridge Company on the face of it.

"We have tried to fix this agreement so that we believe that you will be protected and feel safe to do the work and at the same time it will not injure us.

"Yours very truly.
"W. I. DAVIS, of Davis Constructing Company."

All this evidence was objected to by defendant on the ground that it failed to prove a contract and was irrelevant and immaterial.

No written reply was made to the acceptance of the Davis Construction Company but plaintiff's foreman testified that he had a conversation with Mr. Davis, of the Davis Construction Company, the latter part of April or first of May, 1924, in regard to tearing down the old bridge. That conversation was as follows:

"A. Well, about the 26th is when he (Mr. Davis) told me to go ahead and take the old bridge down and he would put $1200 in the Simmons-Town Bank, that either I or the company could draw when the work was done, I told him if he would go ahead and put it there, I would go ahead with the work, and he said he would. I got orders from the office to proceed to take the bridge down.

"Q. After receiving orders to take the bridge down, did you ever have any conversation about that with W. I. Davis? A. Not exactly about that.

"Q. Tell what, if any, conversation you did have with him after receiving orders and when was it? A. Well, he stopped in on two or three different occasions and asked how we was getting along with the work and about what it was going to cost and a few things like that, is the best of my recollection. He never did say anything more about the cost or putting the money in the bank, but wanted to know something about what it was going to cost and I told him I didn't keep an exact record of the cost.

"Q. I will get you to state whether or not you ever notified him and if so what was said? A. After I got orders to proceed I notified him I had orders to proceed. After that conversation, I proceeded to take down the bridge, and did complete the work, about near the middle of June, 1924."

Defendant lays great stress on that part of the foregoing conversation in which plaintiff's foreman said that Davis inquired about the price as indicating that no price for the work had been agreed upon. The inquiry may have been based on mere curiosity as to how much plaintiff was making out of the deal. That is not for us to say. We are of the opinion, however, the final proposal for this work and the acceptance written thereon by the Davis Construction Company, when considered with their letter of transmittal, constituted a complete contract, requiring no further acceptance or approval on the part of plaintiff. There was no condition to the acceptance demanding a reply. The words "but it is understood that the amount will be deducted from the Vincennes Bridge Company as per our contract with them," did not in any manner affect or modify the acceptance by the Davis Construction Company. They promised to pay the $1200 when the work was finished. The words above quoted were added to the acceptance merely to protect the Davis Construction Company in their contract with the Vincennes Bridge Company and not as a condition to their acceptance. We believe the letter of

transmittal of date April 27, 1924, bears out that construction wherein it is said they tried to fix the agreement so as to protect the plaintiff and not injure themselves (The Davis Construction Company.) We, therefore, do not consider the case of Sarran v. Richards, 151 Mo. App. 656, 132 S. W. 285, and other cases of similar import, cited by defendant, in point.

But even though the "rider" placed on the written acceptance be construed as a condition demanding a further acceptance from plaintiff, there was sufficient evidence from which the trial court might sustain a finding that such condition was accepted. There was no withdrawal of their acceptance by the Davis Construction Company, and on May 1, 1924, after the proposal and acceptance above referred to, plaintiff wrote its foreman, Ray Wiggins, to proceed with the work as shown by defendant's Exhibit 2. This foreman testified that after receiving the order to proceed with the work, he so notified W. I. Davis of the Davis Construction Company, who was there on the job. This evidence is disputed and to some extent overthrown by defendant's skillful cross-examination. It was sufficient, however, to support the trial court's judgment. [Allen v. Chouteau, 102 Mo. 309, 14 S. W. 869.] Defendant offered four declarations of law the refusal of which, are assigned as error. No 4, was as follows:

"The court declares the law to be that although the court may believe and find from the evidence that the Davis Construction Company may have agreed with plaintiff to pay to plaintiff the sum of $1200 for the removal of the old bridge described in the evidence, yet plaintiff cannot recover in this action more than the reasonable value of the work of removing said bridge."

The bond signed by defendant contained the condition that if the principal "shall pay all lawful claims for materials furnished or labor performed in the construction of said highway, etc.," then the obligation was to be void, etc. We have held that the statutes relating to the bond must be read into defendant's contract or bond and. therefore, defendant Southern Surety Company became directly and primarily liable on the bond to a subcontractor in the event the principal contractor failed to pay "all lawful claims for materials furnished or labor performed in the construction of said highway." The agreement of plaintiff, as a subcontractor, with the Davis Construction Company constituted a lawful claim and one fully protected by the bond. It is true, as contended by defendant, that a party cannot sue upon a *quantum meruit* and recover upon a special contract, but we consider this is a suit on a special contract and, in the absence of fraud, proof of the contract is sufficient. [Board of Education ex rel. v. United States Fidelity & Guaranty Co., 166 Mo. App. 410, 149 S. W. 46.] It follows the declaration of law No. 4, was properly refused. The same is true as to Declaration No. 5,

to the effect that the court should not consider the contract in estimating the reasonable value of the work.

Defendant asked and the court refused Declaration of Law No. 2 to the effect that if the plaintiff was a subcontractor, under the Davis Construction Company, for the tearing down of the old bridge and that the Davis Construction Company did not procure from the Missouri State Highway Commission, or Engineer, written consent to sublet such contract, then the plaintiff cannot recover. Section 21 of the written contract between the Davis Construction Company and the Missouri State Highway Commission provided, among other things, that "the contract or any portion thereof, shall not be assigned or sublet except with the written consent of the State Highway Board and the engineer." No such written consent was obtained by the contractor. Over defendant's objection J. H. Long, Divisional Highway Engineer representing the State in overseeing this project, testified that at the time this work was being done the State Highway Commission was not enforcing the clause in the contract relative to subletting without written consent. The refusal of this declaration of law No. 2 and the admission of the testimony of Long relative to the subletting clause, are assigned as error. The question is whether the subletting of the contract for the tearing down of the old bridge without the written consent of the commission and engineer was such an alteration of the contract as to discharge the surety.. The law is well settled that in construing the contract of a surety for hire, as in this case, the rule of *strictissimi juris* is greatly relaxed and the rule that sureties are the favorites of the law does not apply. [Missouri, Kansas & Texas Ry. Co. v. American Surety Co., 291 Mo. 92, 236 S. W. 657; Barton v. Title Guaranty & Surety Co., 192 Mo. App. 561, 183 S. W. 694; Bappart v. Surety Co., 140 Mo. App. 675, 126 S. W. 768; Rule v. Anderson et al., 160 Mo. App. 347, 142 S. W. 358; Furniture Co. v. Toll, 133 Mo. App. 404, 113 S. W. 650; Orpheum Theater & Realty Co. v. Kansas City Casualty Co., 239 S. W. 841; Royal Indemnity Co. v. Northern Granite & Stone Co., 126 N. E. 405, 12 L. R. A. & note.] The foregoing cases also hold the contract of a surety, acting for compensation, will be construed most strongly against the surety; that their contracts are more in the nature of insurance contracts and analogous rules of law are applicable.

In Boppart v. Surety Company, supra, l. c. 684, the Court of Appeals hold "that a substantial compliance with the contract upon the part of the obligee is all that.is required in cases like this, and that no mere technical and immaterial departures from the letter of the contract should operate to defeat the purpose of such contract by relieving the surety from all liability."

82

Considering the principals of law above referred to, we are unable to perceive in what manner the failure of the original contractor to procure the consent of the State Highway Commission to the subletting of the contract for removing the old bridge was material to the contract of the surety. There can be no question that subletting was contemplated and provided for by the contract, which, of course, must be considered with the bond. The objection is made to the manner of the subletting, and not to lack of authority to sublet. It appears to us the written consent of the commission was required by the terms of the contract solely for the protection of the State acting through the commission. The Surety Company had no control over or voice in the matter of subletting and would not necessarily know who might be the subcontractor on any phase of the work. The only possible benefit the surety could derive from such provision would be such as might incidentally result from the supervision and control over the selection of the subcontractor by the commission. Supervision and control was exercised by the commission which had a project engineer on the job, so in that respect, defendant could not have been injured. There is no evidence that plaintiff was incompetent to do the work of removing the old bridge. Moreover, the fact that plaintiff company, as the evidence shows, had the subcontract for building the new bridge at or near the point where the old bridge was to be removed and at the time had their machinery and equipment at that place, certainly placed them, in a better position to do the work of removing the old bridge more economically than some contractor who would have to bring this equipment there for that purpose. In other words, we do not believe the surety was injured by the failure to obtain the written consent of the commission to this subletting and such failure should not be construed as a material alteration of the contract. If the commission, having its engineer on the ground, saw fit to waive this requirement the subcontractor should not be deprived of his rights against the surety on that account. The matter of the engineer testifying in regard to the waiving of this requirement we consider immaterial.

Defendant complains of the refusal of its instruction No. 3 to the effect that if the commission changed the original plans and ordered the new bridge to be constructed upon a site outside the original right of way and, after its construction, the old bridge was not within the right of way of the project as modified, then plaintiff could not recover. No authorities are cited in support of this theory. Defendant quotes in his brief the provisions of section 51 of the contract, which provides as follows:

"Existing structures, such as drainage pipes, bridges and culverts found on the highway in its present or final location, which are

not to remain in place shall be removed by the contractor. When their location is such as not to interfere with the work, the removal shall not be done until the new structures replacing them are ready for traffic or until the engineer shall permit. If any material from the existing structures is deemed fit for use elsewhere it shall remain the property of the party of the first part to this contract, and shall be removed without damage, in sections which may be readily transported, and piled neatly at an accessible point. Unless otherwise shown upon the plans, bridge and culvert substructures shall be removed to the level of the original ground surface or the low water line. In case the remaining portions would interfere with the new work, the entire substructure shall be removed. It is to be understood that the contractor may make use of the existing structures, or portions of them during construction, but no material which is considered available for use elsewhere shall be cut, bent, broken or otherwise damaged. Stone masonry or similar material which is not to remain in place and is suitable for the purpose may be used in the new structure. All discarded material, rubbish or debris shall be removed from the highway or disposed of as directed by the engineer.''

Section 28, of the contract contains the following:

''The engineer reserves the right, with the approval of the State Highway Board, to make such alterations in the plans or in the character of the work as may be considered necessary or desirable from time to time to complete fully and perfectly the construction of the roadway, provided such alterations do not change materially the original plans and specifications, and such alterations shall not be considered as a waiver of any condition of the contract nor to invalidate any of the provisions thereof.''

It is undisputed that under the original plans the old bridge was on the right of way and the contractor would have been required to remove it. The reason for the change is briefly stated in the change order as follows:

''2. Reason for ordering change: All of Texas County's supplies must be hauled over this route (Route # 7) by trucks. The present old bridge is the only available crossing over Big Piney River. By shifting alignment as proposed (see plan sheets), present bridge may be left in place until new one is erected; also this proposed alignment reduces a reverse curve of twenty degrees to a reverse curve of sixteen degrees (north of Proposed Bridge).''

There was some evidence that a part of the old bridge at one end was on the right of way as charged. The old bridge was within approximately twenty feet of the new after it was built and a few feet lower down.

We are of the opinion defendant's objection cannot be upheld for the reason that even though the old bridge was outside the changed right of way some few feet the Highway Commission had the power under the liberal terms of the contract to order its removal. As originally planned there can be no question that the old bridge was to be removed as a part of the contract. For the convenience of the contractor, the public and everyone concerned the site of the new bridge was slightly changed so as to leave the old bridge intact and usable during the process of erecting the new. Provision was made in the contract for adjusting the additional cost, if any, caused by any change or additional work not specified in the contract. To have permitted this old bridge to remain so near the new, abandoned to the elements, would have been not only a waste of material in which the State had an interest, but a source of danger to the new structure in times of flood or high water, and also to those who might attempt to use it. Its removal after the change in plans added no new element to the contract and the duty to remove the old bridge seems never to have been questioned by the contractor. The State engineer testified that it was understood the old bridge was to be removed and the "change order" itself tends to corroborate that testimony. In view of these conditions and under the authorities heretofore noted we believe the removal of the old bridge to have been included within the terms of the contract reasonably construed, although it may have been outside the right of way as changed. However, there was not only testimony that a part of the old bridge was on the right of way as changed, but also evidence that the title to the original right of way on which the old bridge stood was in the State at the time the old bridge was removed. We therefore believe there was no reversible error in refusing declaration of law No. 3, under the circumstances, although as an abstract proposition of law it was unquestionably correct.

Other errors assigned relate to (1) The admission in evidence of the application of Davis for the bond sued upon, (2) in permitting the witness Long to testify that he required the contractor to remove the bridge and (3) as to how much money was retained by the Highway Commission from the amount due Davis. As to the introduction of the application for the bond no exceptions were saved. The other errors we deem immaterial especially in view of the fact the case was before the court sitting as a jury. Finding no reversible error, we believe the judgment should be affirmed. It is so ordered.

*Cox, P. J.,* and *Bradley, J.,* concur.